# EXHIBIT 1

Wright

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

MAR 29 2007

CATHY A. CATTERSON, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| PRESTON MAGIYA, | No. 05-70297 |
| Petitioner, | Agency No. A27-163-833 |
| v. | |
| ALBERTO R. GONZALES, Attorney General, | ORDER |
| Respondent. | |

RECEIVED
2001 APR -3 A 10-2
OFFICE OF
IMMIGRATION LITIGATION
CIVIL DIVISION

Before: HUG, W. FLETCHER, and BEA, Circuit Judges.

Preston Magiya petitions for review of the Board of Immigration Appeals'

dismissal of his appeal of the immigration judge's order denying Magiya's

application to terminate deportation proceedings. Magiya asserts and has testified

that he is a native and citizen of the United States.

Under 8 U.S.C. § 1252(b)(5)(B), "[i]f the petitioner claims to be a national

of the United States and the court of appeals finds that a genuine issue of material

fact about the petitioner's nationality is presented, the court shall transfer the

proceeding to the district court . . . for a new hearing on the nationality claim and a

decision on that claim as if an action had been brought in the district court . . . ."

39-11-11556·17

TW

We find that a genuine issue of material fact exists as to Magiya's nationality. Therefore, we order this proceeding transferred to the district court for a new hearing on Magiya's nationality claim. *Agosto v. INS*, 436 U.S. 748, 757 (1978). We hold this petition for review in abeyance pending judicial determination of Magiya's claim to nationality. *See Chau v. INS*, 247 F.3d 1026, 1032 (9th Cir. 2001).

It is so ordered.

# EXHIBIT 2

UNITED STATES DEPARTMENT OF JUSTICE
Immigration and Naturalization Service             No.

ORDER TO SHOW CAUSE, NOTICE OF HEARING, AND WARRANT FOR ARREST OF ALIEN

In Deportation Proceedings under Section 242 of the Immigration and Nationality Act

UNITED STATES OF AMERICA:                        File No. __A27 163 833__

                                                                    Respondent.

In the Matter of   Preston MAGIYA
                   AKA:  Preston HUDSON-Amagiya, Preston HUDSON
                   In Service Custody
Address (number, street, city, state, and ZIP code)

       UPON inquiry conducted by the Immigration and Naturalization Service, it is alleged that:

1. You are not a citizen or national of the United States;
2. You are a native of _the United Kingdom_ and a citizen of ___the United Kingdom___ ;
3. You entered the United States at _Newark, New Jersey_ on
   or about _January 14, 1985;_
              (date)


       SEE CONTINUATION SHEET ATTACHED HERETO AND MADE A PART HEREOF


       AND on the basis of the foregoing allegations, it is charged that you are subject to deportation
pursuant to the following provision(s) of law:


       SEE CONTINUATION SHEET ATTACHED HERETO AND MADE A PART HEREOF


       WHEREFORE, YOU ARE ORDERED to appear for hearing before an Immigration Judge of the
Immigration and Naturalization Service of the United States Department of Justice at _____
__DATE, TIME AND PLACE TO BE SET BY IMMIGRATION COURT._____
on _____ at _____ m, and show cause why you should not be
deported from the United States on the charge(s) set forth above.

WARRANT FOR ARREST OF ALIEN

       By virtue of the authority vested in me by the immigration laws of the United States and the
regulations issued pursuant thereto, I have commanded that you be taken into custody for
proceedings thereafter in accordance with the applicable provisions of the immigration laws and
regulations, and this order shall serve as a warrant to any Immigration Officer to take you into
custody. The conditions for your detention or release are set on the reverse hereof.

Dated:   April 22, 1988
                                          (signature and title of issuing officer)
Time Issued: 1:00PM                        Joseph F. Brandon, Jr.
                                          (City and State)

                                          Assistant District Director
                                          for Investigations
                                          San Francisco, California

I-618 served and list of
free legal services provided

Form I-221S (Rev. 8 1-77) Y                (over)

                                                        000875

## NOTICE TO RESPONDENT

## ANY STATEMENT YOU MAKE MAY BE USED AGAINST YOU IN DEPORTATION PROCEEDINGS

### THE COPY OF THIS ORDER SERVED UPON YOU IS EVIDENCE OF YOUR ALIEN REGISTRATION WHILE YOU ARE UNDER DEPORTATION PROCEEDINGS. THE LAW REQUIRES THAT IT BE CARRIED WITH YOU AT ALL TIMES

If you so choose, you may be represented in this proceeding, at no expense to the Government, by an attorney or other individual authorized and qualified to represent persons before the Immigration and Naturalization Service. You should bring with you any affidavits or other documents which you desire to have considered in connection with your case. If any document is in a foreign language, you should bring the original and certified translation thereof. If you wish to have the testimony of any witness considered, you should arrange to have such witnesses present at the hearing.

At your hearing you will be given the opportunity to admit or deny any or all of the allegations in the Order to Show Cause and that you are deportable on the charge set forth therein. You will have an opportunity to present evidence on your own behalf, to examine any evidence presented by the Government, to object, on proper legal grounds, to the receipt of evidence and to cross examine any witnesses presented by the Government. Failure to attend the hearing at the time and place designated hereon may result in a determination being made by the Immigration Judge in your absence.

You will be advised by the Immigration Judge, before whom you appear, of any relief from deportation for which you may appear eligible. You will be given a reasonable opportunity to make any such application to the Immigration Judge.

### NOTICE OF CUSTODY DETERMINATION

Pursuant to the authority of Part 242.2, Title 8, Code of Federal Regulations, the authorized officer has determined that pending a final determination of deportability in your case, and, in the event you are ordered deported, until your departure from the United States is effected, but not to exceed six months from the date of the final order of deportation under administrative processes, or from the date of the final order of the court, if judicial review is had, you shall be:

☐ Detained in the custody of this Service.          ☐ Released on recognizance.

☑ Released under bond in the amount of $ _20,000_ .

You may request the Immigration Judge to redetermine this decision.

☑ I do    ☐ do not request a redetermination by an Immigration Judge of the custody decision.

_Weston Magnya_                              _4/22/88_
(signature of respondent)                      (date)

### REQUEST FOR PROMPT HEARING

To expedite determination of my case, I request an immediate hearing, and waive any right I may have to more extended notice.

_____          _____
(signature of respondent)                      (date)

### CERTIFICATE OF SERVICE

Served by me at _San Francisco CA_ on _April 22_ 19_88_ at 3_57_ p. m.

_Personal Service_

_WD Kelley_ S/A
(signature and title of employee or officer)

000876




MAGIYA, Preston
aka:  HUDSON-Amagiya, Preston, HUDSON, Preston.
A27 163 833

### CONTINUATION SHEET

4. You were then admitted as a nonimmigrant visitor until July 13, 1985;

5. You have violated the conditions of your status in that you were incarcerated in the San Francisco County Jail from February 3, 1988 until April 21, 1988, as a result of your March 16, 1988 conviction by the Superior Court, City and County of San Francisco for the offense of Possession of a Bad Check/Money Order, in violation of Section 475a of the California Penal Code;

6. You have not departed the United States.

AND on the basis of the foregoing allegations, it is charged that you are subject to deportation pursuant to the following provision(s) of law:

Section 241(a)(2) of the Immigration and Nationality Act, in that, after admission as a nonimmigrant under Section 101(a)(15) of said Act, you have remained in the United States for a longer time than permitted.

Section 241(a)(9) of the Immigration and Nationality Act, in that, after admission as a nonimmigrant under Section 101(a)(15) of said Act, you failed to comply with the conditions of the nonimmigrant status under which you were admitted.

000877

# EXHIBIT 3

# RECORD OF DEPORTABLE ALIEN (See A.M. — 2790.31 - 34 for Instructions)

| Family Name (Capital Letters) | Given Name | Middle Name | Sex | Hair | Eyes | Complexion |
|---|---|---|---|---|---|---|
| HUDSON-AMAGIYA, PRESTON OGHENEOCHUKO aka AMAGIYA PRESTONE | | | M | Black | Brown | Black |

| Country of Citizenship | Passport Number and Country of Issue | File Number | Height | Weight | Occupation |
|---|---|---|---|---|---|
| UNITED KINGDOM | | A27 163 833 | 70 | 143 | Student |

| | | | Scars or Marks |
|---|---|---|---|

**U.S. Address** (Residence) (Number) (Street) (City) (State) (Zip Code)

260 29th St, #24, Oakland, California

| | Passenger Boarded At | F.B.I. No. | Marital Status: ☐ Widow(er) ☐ Single ☐ Married ☐ Separated ☐ Divorced |
|---|---|---|---|

**Date, Place, Time, Manner of Last Entry**

1/14/85; NEW; B-2

| | | Method of Location/Apprehension |
|---|---|---|
| **Number, Street, City, Province (State) and Country of Permanent Residence** | | 513/3  518.1 |

| Birthdate | Date of Action | Location Code | (At/Near) | Date & Hour |
|---|---|---|---|---|
| 11/5/64 | 2/16/88 | SFR | SFR | 2/8/88 |

| City, Province (State) and Country of Birth | AR Form: (Type & No.) | | By |
|---|---|---|---|
| UNITED KINGDOM | ☐ Lifted ☐ Not Lifted | | Smirnoff |

| Visa Issued At — NIV No. | Social Security Account Name | | Status at Entry | Status When Found |
|---|---|---|---|---|
| | | | B-2 | Institution |

| Date Visa Issued | Social Security No. | Send C.O. Rec, Check To: | Length of Time Illegally in U.S. |
|---|---|---|---|
| | | SFR | Over 1 yr |

| Immigration Record | Criminal Record |
|---|---|
| Claims none | 487.1PC (10 cts) 475(a) PC $25,000 bail |

| **Name, Address, and Nationality of Spouse (Maiden Name, if appropriate)** | **Number & Nationality of minor Children** |
|---|---|

| **Father's Name, and Nationality and Address, if Known** | **Mother's Present and Maiden Names, Nationality, and Address, if Known** |
|---|---|

| Monies Due/Property in U.S. Not in Immediate Possession ☐ None Claimed ☐ See Form I-43 | Fingerprinted ☐ Yes ☐ No | Lookout Book Checked ☐ Not Listed ☐ Listed, Code | Deportation Charge(s) (Code Words) |
|---|---|---|---|

| **Name and Address of (Last) (Current) U.S. Employer** | Type of Employment | Salary $ __ hr. | From: | To: |
|---|---|---|---|---|

**Narrative** (Outline particulars under which alien located/apprehended. Include details, not shown above, re time, place, manner of last entry, and elements which establish administrative and/or criminal violation. Indicate means and route of travel to interior.) Alien has been advised of communication privileges pursuant to 8 CFR 242.2(e).

Initial _OPC_  Date _4/22/88_

Subject was encountered at San Francisco City Jail after having been booked on charges relating to the theft of moneys from Merril Lynch Realty by Jacob Orhorhaghe, a native aand citizen of Nigeria, also under Service proceedings. At time of encounter, Subject displayed a hostile attitude and claimed to be a United States citizen by virtue of birth in Richmond, California on 8/28/63. Subject stated that his mother Margaret Magiya was born in 1943 in Kansas and that his father, Samson Magiya was also a United States citizen but he couldn/t state where he was born. On 2/10/88, following consultation with the Chief Legal Officer, a request for certification of nonexistence of record was forwarded to the Department of Vital Statistics. (Local record check with Vital States established there was no record of Subject's birth in Richmond). On February 10, 1988 the California Department of Motor Vehicles checked their records and established that Subject was the same as Preston O. Hudson Amagiya, birthdate 11-05-64. This information was based on a match of fingerprints. The address given by Subject at the time of application for a driver's license, 906 Union St, Oakland matches the address given by Preston Hudson, birthdate 11/5/64 who gives an address of destination as 90 Union St, Oakland. NIIS records reflect that Preston Hudson was admitted to the U.S. at Newark, New Jersey on 1/14/85 as a visitor. I-94 99600205308 relates. Subject also had indicated on an application for savings account 4/003-466227-0. attached as part of the police report, that he was born in the United Kingdom, which birth he denied at interview in jail

| DISTRIBUTION | | Received (subject and documents) (report of interview) from |
|---|---|---|
| 1 - File 1 - Log | | Officer: Michael Smirnoff, SSA  2/16/88 ___ 19 __ or ( )  M.  Disposition OSC/WA.  (Receiving Officer) |

Form I-213 (Rev. 4-16-79)Y UNITED STATES DEPARTMENT OF JUSTICE Immigration and Naturalization Service

000815

Addendum to I-213 dated 2/16/88

## AKA'S

MAGIYA, Preston;  PRESTONE, Don A.;  OWEN, Don

## DOB'S

11/5/64;  5/11/64;  6/28/63.

## Social Security Numbers Issued and/or Claimed

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    (issued by SSA;  Preston Hudson;  POB London)
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    (issued by SSA;  Preston AMAGIYA;  POB London)
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    (registration unknown)
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    (Not registered to SUBJECT)
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    (issued by SSA;  Preston MAGIYA;  POB California)

## Current Criminal Violations

False claim to US citizenship (18 USC 911); false statements (18 USC 1001); theft of Government funds (20 USC 1097); misuse of Social Security numbers (42 USC 408 (g) (felony)) or misrepresentation (42 USC 1307(a)(mis'd.)).

## Conviction

3-16-88, San Francisco County Superior Court, Possession of forged checks, intent to defraud (475(a)PC); sentenced 3 years probation, 79 days CJ (CTS), restitution.  (Documents on request, to be available approx. 4-28-88.)

## Evidence

1.  As to nationality:

    a.  Fingerprint examination report dated 4/21/88 establishing that PRESTON AMAGIYA and PRESTON HUDSON are the same person.

    b.  NIIS printout in file showing date and place of entry as in I-213, citizen of the United Kingdom. (UK passport record check negative.)

2.  As to false claims to US citizenship:

    a.  California Delayed Registration of Birth dated 6/23/86;

        1)  Affidavit by Ira Lee BERRY, dated 4/20/88, denying alleged personal knowledge of SUBJECT'S CA birth;

        2)  Crocker Bank signature card, account number 0201-038469-22, showing SUBJECT'S claim of birth in Illinois (subpoena attached).

    b.  SSA printouts (certified); SS-5's (applications for Social Security number) signed by SUBJECT on order;



c. Student loan file, showing Student Aid Applications signed by SUBJECT, on which he claimed US citizenship.

**BOND FACORS**

1. The above evidence of false claims to US Citizenship and multiple SSAN'S point to a person intent on evading detection and accountability through the creation of different identities.

2. SUBJECT'S adoption of an assumed identity (CDL # C5053589) within two months of his entry indicates an intent to remain indefinitely despite the limitations of his B2 Status.

3. SUBJECT'S false claims to US Citizenship indicate an absence of credibitlity.

4. SUBJECT'S predisposition toward illegal acquisition of money (activities causing his above conviction; multiple unrecovered Social Security cards suggest the willingness to work unlawfully) indicate a lack of integrity.

5. SUBJECT'S conviction of a CIMT makes deportation a strong likelihood.

6. The fact that a criminal complaint is being prepared by the U.S. Attorney's office for the above current violations, and that SUBJECT has no known current address makes it unlikely that he will be accessible to the Government should he obtain release.

7. Comments atttributed to SUBJECT (p. 2 SFPD Incident Report dated 2/3/88: "You (arresting officer) should be dead for calling the Immigrations.") indicate a fear and expectation of deportation.

8. SUBJECT'S application for a JRAD indicate a disinclination to appear in deportation proceedings.

**Investigation**

Since SUBJECT'S arrest by SFPD, a California Delayed Registration of Birth was received from the State indicating he was born 8/28/83 in Richmond, CA. The registration was based on supporting affidavits allegedly filed by a cousin and an uncle claiming knowledge of SUBJECT'S birth facts. Other supporting documentation was a Crocker Bank "record" of unspecified content. One affiant, IRA LEE BERRY, the alledged uncle, was interviewed at his Oakland residence, and provided an affidavit stating that he never filed a statement with the State supporting SUBJECT'S claim. An original signature card was obtained by subpoena from Wells Fargo Bank; signed by SUBJECT, it bore (Crocker) account number 0201-038469-22 and showed birth in Illinois. The office services supervisor from the California Department of Health advised this date by telephone that, based on the evidence found, that office will issue a certificate of no record, invalidating the birth registration.



A search of the records of Department of Health & Human Services revealed at least three valid Social Security cards issued to SUBJECT under AKA's. Certified copies of computer printouts were obtained, containing the information on the applications SUBJECT filed; copies of the applications have been ordered.

The Financial Aid advisor of the College of Alameda provided copies of SUBJECT'S aid file, showing applications signed by subject on which he claimed eligibility as a US citizen.

Subject was convicted on 3/16/88 in San Francisco County Superior Court of possession of a bad check (475 A PC); with his co-defendant, he embezzled approximately $33,000 from Merrill-Lynch Realty of San Francisco. He was sentenced on 4/21/88 to three years probation, 79 days in county jail with credit for 79 days served, and ordered to pay restitution.

Efforts to establish SUBJECT'S nationality have been negative to date; the British Consulate in San Francisco reported that a search of passport records were negative relating to SUBJECT. A request through Interpol for identification of SUBJECT through fingerprint checks is pending. A request for assistance from the Nigerian consulate is also pending.

The SFR AUSA has agreed to the prosecution of SUBJECT for student loan fraud (20 USC 1097) and misuse of Social Security cards (42 USC 408 (g) or misrepresentation (42 USC 1307 (a).

D. P. Dilley
Special Agent

# EXHIBIT 4

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
OFFICE OF THE IMMIGRATION JUDGE
San Francisco, California

File No.:   A 27 163 833                    May 2, 1988

In the Matter of                )
                                )
PRESTON HUDSON a/k/a/           )
  PRESTON HUDSON-AMAGIYA a/k/a  )      IN  DEPORTATION  PROCEEDINGS
    PRESTON MAGIYA              )
                                )
            Respondent          )

CHARGE:

APPLICATIONS: Respondent is a United States Citizen.


ON BEHALF OF RESPONDENT:                ON BEHALF OF SERVICE:

Douglas A. Prutton                      Harold S. Spar, Esq.
1522 Webster Street, 100                General Attorney
Oakland, California  94612


                ORAL DECISION OF THE IMMIGRATION JUDGE

        My  order  would  read  that  the  respondent  has  a

California birth certificate  that has not been  declared invalid

or fraudulent by the State of California.

                            ORDER

        IT  IS ORDERED  that  the proceedings  are terminated.

This is without prejudice on the part of the Service ... whether

to file an Order to Show Cause.



                        _____
                        PHILIP P. LEADBETTER
                        Immigration Judge


                            1


                                                        000777

**U.S. Department of Justice**
**Executive Office for Immigration Review**
**Office of the Immigration Judge**

Matter of                                   File A __27 163 833__

                                    )
    PRESTON HUDSON a/k/a            )
      PRESTON HUDSON-AMAGIYA a/k/a  )    In DEPORTATION  Proceedings
      PRESTON MAGIYA               )
                                    )
                Respondent          )    Transcript of Hearing

Before __PHILIP P.  LEADBETTER_____, Immigration
Judge

Date: __MAY 2, 1988_____    Place: __SAN FRANCISCO, CALIF.__

Transcribed by __FREE STATE REPORTING, INC.__  At __ANNAPOLIS, MD__

Official Interpreter __NONE_____

    Language __ENGLISH_____

Appearances:

    For the Immigration and                For the Respondent:
    Naturalization Service:
                                           __DOUGLAS A. PRUTTON__
    __HAROLD S. SPAR, ESQ.__
            *(Trial Attorney)*
    General Attorney

    _____
            *(Station)*

000778

# EXHIBIT 5

**DECLARATION OF DEBBIE BALSLEY**
**RE: <u>Magiya v. Keisler</u>, No. C 07-2945 CRB**
**Nationality Case**

I, Debbie Balsley, declare as follows:

1.   My name is Debbie Balsley and I am employed by the California Department of

Public Health (CDPH), Office of Vital Records (OVR).  The address of my employment

is as follows:

> 1501 Capitol Avenue – M.S. 5103
> P.O. Box 997410
> Sacramento, CA 95899-7410.

2.   My occupation title with the Office of Vital Records is Chief, Registration Section.

My classification is Office Services Manager I.

3.   My occupation entails the oversight of the registration of all California vital records,

including birth, death and marriage certificates and subsequent amendments.

4.   The process for a person to register a delayed birth certificate is as follows:  If a

Certificate of Live Birth has not been recorded in either the County Recorder's Office or

the California Office of Vital Records, the registrant/applicant may apply for registration

of a delayed birth certificate and is required to provide the following documents/items to

the OVR for prescreening and acceptance by the Delayed Registration Staff:

- A properly completed Delayed Registration of Birth (VS 85) form with appropriate signatures.

- Documentary evidence or affidavits as outlined in Health & Safety Code, Section 102580: "...original or certified copy of a record that was executed at least five years prior to the date of application, and that substantiates the date and place of birth of the person whose birth is being registered ... except that if the person whose birth is being registered is under 12 years of age, the record shall have been executed only at least two years before the date of application."

- A notarized Sworn Statement.

- If the child was born January 1, 1997 or later, and the father's name is to be listed on the certificate, a copy of a Declaration of Paternity, a copy of the parents' marriage certificate, or a copy of the parents' State Registered Domestic Partnership certificate (notarized Sworn Statement not needed if a Declaration of Paternity form is submitted).

- A $20 registration fee (which includes the issuance of one certified copy of the registered record).

5.  The process for approving an application for a delayed birth certificate is as follows: The Delayed Registration staff pre-screens all applications for Delayed Registrations of Birth using the following criteria:

- Every item on the VS 85 form must be completed accurately and contain all appropriate signatures.

- The form must be an original and not a photocopy.

- Every letter and word must be clear and legible.

- All supporting documentation is reviewed and verified by Delayed Registration staff, who contact the issuing agency for validation of facts.

- The notarized Sworn Statement, Declaration of Paternity form, marriage record or State Registered Domestic Partnership certificate is reviewed for acceptance before the father's name can be added to Delayed Registrations of Birth occurring after January 1, 1997.

- A Check or Money Order for $20 must be enclosed and valid for acceptance (i.e. date of check, appropriate signature, no 3rd party check).

If the application for a delayed birth registration is acceptable for processing, the Delayed Registration staff key it into the OVR's Center Request Tracking System (CRTS), which assigns a tracking number and generates a postcard with the tracking number and the current processing times. The postcard is then mailed to the requester. Delayed Registration staff process the request, assign a State File Number, and place the OVR stamp and date stamp on the original VS 85. The VS 85 is then scanned and indexed into the FileNet system. FileNet is OVR's vital record imaging system, which allows staff to view and print plain copies of original vital records instead of manually searching the original records from OVR files or from the State Record Center. Once the VS 85 is available on FileNet, a certified copy is printed from FileNet. The certified copy is reviewed by staff for quality control, the serial number from the banknote copy is updated on CRTS, and the request is routed to the Mail Processing Unit for receipt

print-out, date stamp, and embossing of the certified copy.  The certified copy is then mailed to the requester.

6.   The process for sealing birth records is as follows:  The OVR will seal birth records pursuant to a court order (i.e. adjudication of facts of parentage; adoption; gender reassignment; Witness Protection Program), or requirements in the California Health & Safety Code (i.e., paternity acknowledgement [Sections 102750 – 102765], gender correction [Sections 103446 – 103449], application to delete racial slurs [Sections 103350 – 103375]).  OVR staff will seal the birth record recorded within our indices, as identified in the court order or on the appropriate vital record form listed below in Item 7, by placing a copy of the vital record along with the court order or appropriate vital record form and all supporting documentation within a sealing envelope.  The envelope is sealed and placed in a locked cabinet inside a secured filing room.  If the vital record is on FileNet, a "SEALED" annotation is placed on the record; if the vital record is on Film, the original film is 'marked' and the OVR Universal Database is flagged as "SEALED."

7.  Birth records/certificates get sealed for a number of reasons, such as adoption, gender reassignment, gender correction, adjudication of the facts of parentage, acknowledgement of paternity, witness protection, or to delete racial slurs.  OVR will seal the record upon acceptance of the following Vital Record forms, pursuant to the requirements specified in California law.

**VS 21** - Adjudication of Facts of Parentage (requires court order pursuant to California Health & Safety Code, Sections 102725 - 102735)

**VS 22** – Acknowledgement of Paternity (sealed pursuant to California Health & Safety Code, Sections 102750 - 102765)

**VS 23** – Used only for applications under the Secret Witness/County Witness Protection Program (requires court order)

**VS 24(S)** – Used for Gender Reassignment (requires court order pursuant to California Health & Safety Code, Sections 103425 - 103445)

**VS 24(S)** – Used for Gender Correction (sealed pursuant to California Health & Safety Code, Sections 103446 - 103449)

**VS 24(S)** – Used to Delete Racial Slurs (sealed pursuant to California Health & Safety Code, Sections 103350 - 103375)

**VS 44** - Court Report of Adoption (requires court order pursuant to California Health & Safety Code, Sections 102625 102710)

OVR also seals any vital record if directed to do so by a court order. Prior to 2005, OVR administratively sealed records.

8. Once an original birth certificate is sealed, the only valid record is the replacement record. If the original birth certificate is sealed, copies issued prior to the sealing are not valid documents for identification purposes; verification of validity with OVR or a local vital records office would result in a response that the office has no such record on file.

9. Prior to 2005, if the OVR received a letter from an official government agency (e.g., US Department of Justice, Immigration and Naturalization Service, US Department of State, Passport Services, etc.), which had procured documentary evidence that the vital record established by our office was done so under fraudulent circumstances, our office would administratively seal the vital record under the authority of the Chief of Vital Records. Subsequent to 2005, an amendment to the original certificate is attached, the original certificate is marked page "1 of 2," the amendment is marked page "2 of 2," and the amendment states that the original document was fraudulently established based on documentary evidence provided by the official government agency. Officials representing the agency claiming that the original record is fraudulent must sign the affidavit contained on the amendment form.

10. If a birth certificate has been sealed, it is no longer a valid birth certificate that can be used for identification purposes. However, if the receiving party maintained an actual certified copy of the birth certificate that was issued prior to sealing and presented it for identification purposes, it would most probably be accepted on its face value unless the agency reviewing the document contacted OVR to verify its authenticity.

11. There is no 1988 Delayed Registration of Birth on file with OVR for Mr. Preston Magiya. OVR registered the Delayed Registration of Birth in question on June 23, 1986, not 1988. The Chief of Vital Records had the 1986 record administratively sealed on May 16, 1988 after receiving correspondence from the US Department of Justice

dated April 21, 1988.  Any requests for a certified copy of this record *after* May 16, 1988, result in the issuance of a Certificate Of No Public Record.

12. Any inquiry as to the validity of the Delayed Registration of Birth for Preston Chucks Magiya, registered on June 23, 1986, would receive notification from this office that there is no such record on file with the OVR, thereby rendering it non-existent, therefore, an invalid record under California law.

13. The Office of Vital Records administratively sealed Preston Magiya's 1986 birth certificate pursuant to a letter from Joseph F. Brandon, Jr., Assistant District Director for Investigations, with the U.S. Department of Justice/Immigration and Naturalization Service (INS), dated April 21, 1988, providing facts establishing the true identity and birthplace of Preston Chucks Magiya.  The INS informed OVR that INS determined that the bank record submitted for Crocker National Bank had been altered in the year established and the bank record indicated Mr. Magiya's place of birth as Illinois and not California, and the supporting affidavit signed by Mr. Ira Lee Berry was determined to be fraudulent by INS since Mr. Berry supplied the INS an affidavit testifying that he is not Mr. Magiya's uncle and had no personal knowledge of his birth or parentage.  The INS also informed OVR that it had determined Mr. Magiya's true identity and place of birth through forensic fingerprints and handwriting comparison.

14. Mr. Magiya was able to get a second delayed birth certificate registered in 1991 by submitting a second Delayed Registration of Birth (VS 85) form using different

information and supporting documentation from that submitted with the first application filed in 1986.

The delayed birth certificate application filed in 1986:

- Listed his name as Preston Chucks Magiya.
- Listed physician as L. Kenrney.
- Listed mother's name as Margrate Susan Hudson/Magiya.
- Included an affidavit signed by Ira Lee Berry, Uncle, as having knowledge of the birth.
- Included a copy of a bank record established with Crocker National Bank on 08/14/1980.

The delayed birth certificate application filed in 1991:

- Listed his name as Preston Ochuko Magiya.
- Listed physician as Lawrence Kerney.
- Listed mother's name as Margaret Susan Omene (Magiya).
- Included an affidavit signed by A.R. Omene, Uncle, as having knowledge of the birth.
- Included a copy of a Voter Registration application established 01/21/1986.
- Included a copy of a Social Security Administration Notice established 07/23/1986.
- Included a copy of a school record, Peralta Community College, established 04/01/1985.

Because the OVR did not have the availability of the Universal Database established in our office circa 1997, all of our searches were done manually, using the information provided by the applicant. In this instance, since the mother's maiden name was presented differently, i.e., Omene, rather than Hudson, staff overlooked the original filing when manually searching the delayed index cards.

15. Mr. Preston Magiya's 1991 Delayed Registration of Birth has been annotated as "Duplicate Delayed" and cancelled in our Universal Database effective December 23, 1991. "Duplicate Delayed" indicates to OVR staff that it is no longer a valid record for issuance because another record for this individual has already been registered with our office. If anyone were to request the 1991 record, OVR staff would get the "Duplicate Delayed" annotation directing them to the 1986 record. When they go to the 1986 record, they would get the "SEALED" annotation. The requestor would receive a Certificate of No Public Record on file with the OVR.

16. Any requests for the 1991 certificate would result in the issuance of a Certificate of No Public Record on file with the OVR.

17. The 1991 certificate is sealed. The index is marked "Duplicate Delayed." The certificate was sealed on December 21, 1991, pursuant to information received from INS that it, too, was fraudulently filed.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that if called to do so I could competently testify to the same.

Executed on October 25, 2007, at Sacramento, California.

DEBBIE BALSLEY

# EXHIBIT 6

U.S. Department of Justice

Executive Office for Immigration Review

*Board of Immigration Appeals*

SFR

Chairman

5107 Leesburg Pike, Suite 2400
Falls Church, Virginia 22041

AUG - 3 1992

Douglas A. Prutton, Esquire
Immigration Law Center
1322 Webster St., Suite 100
Oakland, CA  94612

MAGIYA
A27 163 833

Enclosed is a copy of the Board's decision and order in the above-referenced case.

Very truly yours,

David L. Milhollan
Chairman

Enclosure

Panel Members:  DAVID L. MILHOLLAN
FRED W. VACCA
M. Christopher Grant

RECEIVED
DEPARTMENT OF JUSTICE

AUG 1 4 1992

EXECUTIVE OFFICE
IMMIGRATION REVIEW
OFFICE OF IMMIGRATION JUDGE
SAN FRANCISCO, CALIFORNIA

A27 163 833

U.S. Department of Jus.
Executive Office for Immigration Review

Decision of the Bo... ...migration Appeals

Falls Church, Virginia 22041

File: A27 163 833 - San Francisco          Date:   AUG - 3 1992

In re:  PRESTON MAGIYA a.k.a. Preston Hudson-Amagiya
        a.k.a. Preston Hudson

IN DEPORTATION PROCEEDINGS

APPEAL

ON BEHALF OF RESPONDENT:    Douglas A. Prutton, Esquire
                            Immigration Law Center
                            1322 Webster Street, Suite 100
                            Oakland, California  94612

ON BEHALF OF SERVICE:   Leonard A. Rosenberg
                        Associate District Counsel

CHARGE:

    Order:  Sec. 241(a)(2), I&N Act [8 U.S.C. § 1251(a)(2)] -
            Nonimmigrant - remained longer than permitted

            Sec. 241(a)(9), I&N Act [8 U.S.C. § 1251(a)(9)] -
            Nonimmigrant - failed to comply with conditions of
            status

    Application:  Termination of proceedings

    The Immigration and Naturalization Service appeals the May 2,
1988, decision of the immigration judge ordering deportation
proceedings against the respondent terminated.  The appeal will be
sustained and the record remanded to the immigration judge for
further proceedings.

    An Order to Show Cause and Notice of Hearing (Form I-221S) was
issued on April 22, 1988, alleging that the respondent is a native
and citizen of the United Kingdom who entered the United States as
a nonimmigrant on January 14, 1985.  He was charged with
deportability under sections 241(a)(2) and (a)(9) of the
Immigration and Nationality Act, 8 U.S.C. §§ 1251(a)(2) and
(a)(9), as a nonimmigrant who remained longer than permitted, and
who failed to comply with the conditions of his status.

    During the deportation proceedings, the respondent produced a
Delayed Registration of Birth issued by the State of California on
June 23, 1986.  See Exhibit 2.  The certificate states that
Preston Chucks Magiya was born on August 28, 1963, in Richmond,
California.  The certificate was issued upon the submission of two
affidavits from persons claiming to have knowledge of the
respondent's birth in the United States.  The only other document
admitted into evidence by the immigrati... ...the ...der to
Show Cause.

000743

A27 163 833

Upon receipt of the delayed birth certificate, the immigration judge inquired whether the Service had anything issued by the State of California declaring that the certificate was fraudulent. The Service responded in the negative, but stated that they had other evidence indicating that the birth certificate was fraudulently obtained. This included the testimony of the investigating immigration officer, driver's licenses indicating that the respondent has two names, and evidence that the respondent entered the country as a nonimmigrant. It also proffered evidence that the State of California had no other record of the respondent's birth, and that the secondary evidence on which the delayed birth certificate was issued was fraudulently obtained. See Transcript at 2,3. The Record of Deportable Alien (Form I-213) was additionally submitted for consideration. The respondent objected to these documents because they were copies. 1/ The immigration judge responded by questioning whether the respondent saw the originals which were shown to him during the previous bond determination. Transcript at 6. The Service also noted that all of the evidence had been previously submitted, and that the originals would be obtained if necessary. Transcript at 7. The Service also requested a "reasonable continuance" in the case in order to obtain the Service file. 2/ This request was denied.

------------------------------------------------------------

1/   The respondent also objected to some of the evidence as hearsay. We note that hearsay is admissible in immigration proceedings if it is probative and its use is fundamentally fair. See e.g., Cunanan v. INS, 856 F.2d 1373 (9th Cir. 1988); Beliza v. INS, 709 F.2d 1231 (9th Cir. 1983); Tashnizi v. INS, 585 F.2d 781 (5th Cir. 1978); Matter of Ramirez-Sanchez, 17 I&N Dec. 503 (BIA 1980); Matter of Toro, 17 I&N Dec. 340 (BIA 1980); see also Dallo v. INS, 765 F.2d 581 (5th Cir. 1985); cf. INS v. Lopez-Mendoza, 468 U.S. 1032 (1984); Richardson v. Peralez, 402 U.S. 389 (1970).

2/   Although it is unclear, it appears that a bond proceeding was held shortly before the deportation proceeding. The Service attorney's statements indicate that the original documents, and other documents he wished to submit, were in the bond case file. On appeal, the Service contends that it only requested a few minutes continuance to obtain the file, but the record only indicates that he requested a "reasonable" continuance. Because this case is appropriate for a remand on other grounds, we need not address whether the immigration judge erred in failing to continue the case at the Service's

(Cont'd)

-2-

000744

A27 163 833

The Service responded by putting the investigating immigration officer on the stand to present a foundation for the documents and to testify regarding the respondent's nonimmigrant status. The officer stated that his investigation revealed that the respondent's delayed birth certificate was fraudulent. The officer began to testify about his conversations with a California Department of Health Service's manager regarding the delayed birth certificate. The immigration judge stopped the testimony upon the Service's admission that the delayed birth certificate had not been declared invalid by the State, and the immigration judge refused to mark the documents proffered by the Service into evidence. The Service took exception to this action, and the immigration judge subsequently issued his decision. The Service never declared that its direct examination of the officer was completed.

The immigration judge concluded that the respondent had a California birth certificate that had not been declared invalid or fraudulent by the State of California. He ordered that the proceedings be terminated ". . . without prejudice on the part of the Service if they wish to file an Order to Show Cause."

The Service has raised several issues on appeal. It contends that the immigration judge erred in refusing to assess the credibility of the delayed birth certificate and by failing to consider the contradictory evidence presented. 3/  It further argues that the immigration judge's refusal to accept the evidence, or to grant a continuance, deprived them of a full and fair hearing. It questions the legal validity of the immigration judge's decision as he appeared to treat the delayed birth certificate as conclusive evidence of citizenship that could only be rebutted by a state issued declaration of fraud. Further, the Service argues that it presented proof of both alienage and deportability, including the Form I-213 which was not accepted into evidence by the immigration judge. The Service asserts that the procedural defects which occurred during the proceedings were manifestly prejudicial and require a remand for new hearing. We agree.

-------------------------------------------------------------------

request. We further note that the Service charges that the immigration judge impermissibly intermingled bond and deportation proceedings. This is not clear to us upon review of the record. See 8 C.F.R. § 242.2(d).

3/  On appeal, the Service has submitted the originals of the documents proffered at the hearing, as well as additional documentation pertaining to the respondent's alienage. We will not consider the contents of these documents on appeal, as they will be addressed by the immigration judge on remand if appropriate.

-3-

000745

A27-163 833

At deportation proceedings, the Service has the authority to assign a trial attorney to present evidence on behalf of the government which is material to the issues of deportability and other issues which may require disposition by the immigration judge. 8 C.F.R. § 242.9; see also section 242(b) of the Act. In the proceedings at issue, the immigration judge improperly precluded the Service from presenting its evidence, most notably the testimony of the investigating officer and the Form I-213. Regarding the oral testimony, the Service presented the officer to testify about his investigation regarding the allegedly fraudulent birth certificate, and the respondent's deportability. However, in the course of the testimony, the immigration judge improperly precluded the officer from completing his testimony. The transcript reveals that the officer's testimony appeared pertinent to the issues at hand, and was necessary to authenticate some of the evidence submitted. Therefore, it was error to preclude the witness from completing his testimony.

Further, the immigration judge should have admitted the Form I-213 into evidence. Deportation proceedings are civil in nature and are not bound by the strict rules of evidence. See Baliza v. INS, 709 F.2d 1231 (9th Cir. 1983); Tashnizi v. INS, 585 F.2d 781 (5th Cir. 1978). Rather, the tests for the admissibility of documentary evidence in deportation proceedings are that evidence must be probative and that its use must be fundamentally fair. Baliza v. INS, supra; Trias-Hernandez v. INS, 528 F.2d 366 (9th Cir. 1975); Marlowe v. United States INS, 457 F.2d 1314 (9th Cir. 1972); Matter of Toro, 17 I&N Dec. 340 (BIA 1980).

The respondent objected to the admission of the Form I-213 into evidence, but he offered no evidence to even suggest that the contents of the form did not relate to the respondent, that the information was erroneous, or that it was the result of coercion or duress. Absent any indication that a Form I-213 contains information that is incorrect or was obtained by coercion or duress, that document is inherently trustworthy and admissible as evidence to prove alienage and deportability. Matter of Barcenas, 19 I&N Dec. 609 (BIA 1988); Matter of Mejia, 16 I&N Dec. 6 (BIA 1976); see also Tejeda-Mata v. INS, 626 F.2d 721 (9th Cir. 1980). Additionally, we note that the reporting officer's testimony at the hearing authenticated the document. See Iran v. INS, 656 F.2d 469 (9th Cir. 1981); see also 8 C.F.R. § 103.2 (officer's testimony could verify accuracy of copy). We therefore find that the Form I-213 should have been admitted into evidence. 4/

-------------------------------------------------------------------

4/ We will not specifically consider the other evidence which was proffered as we are remanding the case for further proceedings.

000746

A27 163 833

The immigration judge appeared to conduct the hearing on the premise that absent any statement from the State of California that the delayed birth certificate was fraudulent, the respondent had provided conclusive proof of his citizenship. 5/ However, it is well-established that a delayed birth certificate is merely prima facie evidence of birth in the United States and that presumptions arising from such evidence are rebuttable and not conclusive. See Louie Hoy Gay v. Dulles, 248 F.2d 421 (9th Cir. 1957); Casares-Moreno v. United States, 226 F.2d 873 (9th Cir. 1955); Pinto-Vidal v. United States, 680 F. Supp. 861 (S.D. Texas 1987); 195 F. Supp. 630 (DDC 1961). Matter of Lugo-Guadiana, 12 I&N Dec. 726 (BIA 1968). In assessing the worth of such a document, we must look behind the instrument itself and consider the evidence upon which it was issued. See Reyes v. Neely, 264 F.2d 673 (5th Cir. 1959). This type of evaluation clearly includes consideration of any contradictory evidence presented by the Service.

In the current case, the immigration judge failed to consider any of the evidence proffered by the Service to support its contention that the delayed birth certificate was false. As noted above, at least some of this evidence should have been considered. We therefore find that the Service was prejudiced in this regard because it was deprived of the opportunity to fully present its case. See Matter of Santos, 19 I&N Dec. 105 (BIA 1984), and that remand is appropriate. On remand, the immigration judge should conduct a full evidentiary hearing using the guidelines set out above. Both the respondent and the Service should present evidence to address the issues of alienage, deportability, and any relief from deportation for which the respondent might apply. Accordingly, the decision of the immigration judge will be vacated, the appeal sustained and the record remanded.

ORDER: The appeal is sustained and the immigration judge's order terminating the proceedings is vacated.

FURTHER ORDER: The record is remanded to the immigration judge for further proceedings consistent with the foregoing opinion and for the entry of a new decision.

*David L. McHaller*

FOR THE BOARD

---

5/ We do note that the immigration judge was correct in addressing the issue of alienage as a threshold issue, and that the government has the burden of proving foreign birth. See section 291 of the Act.

-5-

000747

# EXHIBIT 7

U.S. Department of Justice
Immigration and Naturalization Service

Additional Charges of Deportability

UNITED STATES OF AMERICA:
(ESTADOS UNIDOS DE AMERICA)

File No. __A27 163 833__
(No. de registro)

| | | |
|---|---|---|
| In the Matter of<br>(En el asunto de)<br><br>Preston MAGIYA<br>AKA: Preston HUDSON-Amagiya<br>Preston HUDSON<br><br><br>Respondent. (Demandado) | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | In Deportation Proceedings under<br>Section 242 of the Immigration<br>and Nationality Act<br><br>ADDITIONAL CHARGES<br>OF DEPORTABILITY | (En los tramites de deportación a<br>tenor de la Sección 242 de la<br>Ley de Inmigración y Nacionalidad)<br><br>(Cargos adicionales de<br>Deportabilidad) |

To: (A) ____Preston MAGIYA AKA: Preston HUDSON-Amagiya, Preston HUDSON____
(Name) (Nombre)

There is hereby lodged against you the additional charges(s) that you are subject to be taken into custody and deported pursuant to the following provision(s) of the law:  (Se introduce en contra suya los cargos adicionales que esta sujeto a ser detenido bajo custodia y deportado según la(s) siguiente(s) provisión(es) de ley)

In support of the additional charge(s) there is submitted the following factual  allegation(s)  in addition to those set forth in the order of show cause and notice of hearing:  (En apoyo a los cargos adicionales se somete(n) el/los siguiente(s) alegato(s) ademas de los ya expuestos en la Orden de Presentar Motivos Justificantes y Aviso de Audiencia)

Allegation 2 to be revised to read:

2.  You are a native of the United Kingdom or an unknown country which is not the United States and a citizen of the United Kingdom or an unknown country which is not the United States.

(Ud. es nativo de United Kingdom o un país que no es los Estados Unidos y Ud. es ciudadano de United Kingdom o un país que no es los Estados Unidos.)

__05/27/98__
Date (Fecha)

__Eileen R. Trujillo__
Trial Attorney (Procurador del Gobierno)

Form I-261 (9/14/92)

000873

**ADDITIONAL ALLEGATIONS-CONTINUED**
**(ALEGATOS ADICIONALES-CONTINUA)**

## NOTICE OF RIGHTS
## (AVISO ACERCA DE LOS DERECHOS)

You may be represented, at no expense to the United States government, by an attorney or other individual who is authorized and qualified to represent persons in these proceedings. You may also be represented by a friend, relative, or other person having a pre-existing relationship with you, provided his or her appearance is permitted by the immigration judge.

You will have a hearing before an immigration judge, scheduled no sooner than 14 days from the date you are served with the Order to Show Cause. (Unless you request in writing an earlier hearing date.) The 14 day period is to allow you to seek an attorney or representative, if you desire to be represented.

Ud. puede ser representado, sin costo alguno para el gobierno de los Estados Unidos, por un abogado o otra persona autorizada y calificada para representar personas en estos trámites. También puede representarle un amigo, familiar, o otra persona con la que tenga una relación establecida, siempre que el juez de inmigración permita su comparecencia.

Ud. trendrá una audiencia ante un juez de Inmigración a no menos de 14 días después de la fecha en que le fue entregada la Orden de Presentar Motivos Justificantes (a menos que solicite por escrito una audiencia antes de esa fecha). Se le concede esa plazo de 14 días para que pueda procurar los servicios de un abogado o representante, si asi lo desea.

---

### CERTIFICATE OF SERVICE

This form was served by me at __San Francisco, CA__ on ___May 27___, 19 __98__

by:    [ ] Personal Service

      [x] Certified Mail - Return Receipt Requested    [ ]  Alien    [x]    Counsel of Record

to:    __Marc Van Der Hout, Van Der Hout & Brigagliano, 180 Sutter St., 5th Floor__
        __San Francisco, CA  94104__
                        Address

_Eileen R. Tanguile_

Signature of Issuing Person
(Firma de la persona que la expide)

Alien's Signature (acknowledgement/receipt of this form)
(Firma de extranjero/acuse de recibo)

Form I-261 8/18/92

000874

kws

1     Q.   And those are the only documents admitted into the

2   record.

3     A.   All right.  Thank you.  I'm going to ask your client.

4   JUDGE TO RESPONDENT

5     Q.   You want Mr. Van Der Hout to be your attorney today,

6   correct, sir?

7     A.   Yes, Your Honor.

8     Q.   All right.

9   JUDGE FOR THE RECORD

10     All right.  So, at this point, I think we should begin again

11   with the pleadings, unless there's some other preliminary

12   matters.

13   MS. TRUJILLO TO JUDGE

14     Q.   Your Honor, I would like to amend the OSC, allegation

15   2, to read that, you're a native of the United Kingdom or Nigeria

16   and a citizen of the United Kingdom or Nigeria?

17     A.   All right.

18   JUDGE TO MR. VAN DER HOUT

19     Q.   Mr. Van Der Hout, any objection?

20     A.   Well, if it's going to be evidence presented on that,

21   Your Honor, we would have to have a continuance on that

22   allegation.  We're prepared to plead he's United Kingdom and if

23   there's any evidence  --

24   MS. TRUJILLO TO MR. VAN DER HOUT

25     Q.   No, there's no evidence.  I've given you everything

A 27 163 833          13          April 29, 1998

000269

kws

1   that I would present in my brief with Exhibits A through O.

2       A.   Well, it would seem to me that the Service needs to

3   allege he's a Service, excuse me, a citizen of one country.

4   JUDGE TO MR. VAN DER HOUT

5       Q.   Well, I, I don't necessarily agree with that.  If, if

6   you feel that there's a notice issue and your preparation is

7   lacking as a result of that, even though there appears to be in

8   submissions that have been served on you, some dispute over

9   Nigeria or United Kingdom, I suppose I could grant you a short

10  continuance to deal with that.

11      A.   Your Honor, if it's, the documents presented to us,

12  (indiscernible), that we're asserting that he was a citizen of

13  the United Kingdom, the documentation that's, that we're going to

14  attempt to introduce.

15      Q.   Well, I-213 refers to, you know, Nigeria is raised in

16  the evidence.

17      A.   It's, it's raised in there, but the other documents

18  they introduce, assert he's a citizen of, they wanted to assert

19  that he's a citizen of the United Kingdom.

20  MS. TRUJILLO TO JUDGE

21      Q.   Well, I mean, that's exactly the problem.  I'm not sure

22  if it's United Kingdom or Nigeria.  I'm hoping to get more

23  information when I ask the respondent questions.

24      A.   Well --

25  MR. VAN DER HOUT TO JUDGE

A 27 163 833                    14              April 29, 1998

# EXHIBIT 8

UNITED STATES DEPARTMENT OF JUSTICE
Immigration Court
P.O. Box 2326
San Francisco, CA  94126-2326

File(s) __21/63 833__

In the Matter of

_Preston Magugu_,                          )
                                           )    In Deportation/Exclusion
                                           )    Rescission Proceedings
                                           )
     Respondent(s)/Applicant(s)            )

### MEMORANDUM OF ORAL DECISION

_____ Respondent/Applicant was granted/denied asylum under Section 208(a) of
      the Act.
_____ Respondent/Applicant was granted/denied withholding of deportation under
      Section 243(h) of the Act.
_____ Respondent was granted/denied relief under Section _____.
_____ Respondent was granted/denied suspension of deportation under Section
      244(a) of the Act.
_____ Applicant/Respondent was granted a waiver under Section _____
      of the Act and the proceedings were terminated.
_____ Respondent was granted/denied adjustment of status under Section 245 of
      the Act.
_____ The Applicant's request for leave to withdraw the application for
      admission to the United States was granted.
_____ Applicant is admitted as a _____ nonimmigrant
      until _____.
_____ On condition that a maintenance of status and departure bond in the
      amount of |_____ be posted.
_____ Respondent's adjustment of status was rescinded under Section 246 of the
      Act.
_____ Motion to Reopen/Reconsider submitted by Service/Respondent/Applicant is
      granted/denied.
_____ A stay of deportation is granted/denied.
_____ The proceedings were terminated.
_____ Applicant has been ordered excluded and deported from the United States.
_____ Respondent was granted voluntary departure on or before _____
      with alternate order of deportation to _____ or _____
__X__ Respondent was ordered deported to U.K. or to CANADA if proof of admissibility
      The Service/Respondent/Applicant has/have waived appeal.                provided
__✓__ The Service/Respondent/Applicant has/have reserved appeal which must be
      filed by __8/27/98__.

__XX__ THIS MEMORANDUM HAS BEEN SERVED ON THE RESPONDENT/APPLICANT AND COUNSEL.
If the decision is appealed (except in bond redetermination proceedings), the
full text or oral decision will be transcribed and will become the official
decision.

Other: _____

Date: __7/28/98__                    _____
                                     Dennis F. Coupe
                                     Immigration Judge

0°67D/DFC/702/1hl

000252

kws

1      Q.   I believe that's Exhibit 6, and his name is redacted on

2  my copy, but, you want me to review the exhibits for you?  Four

3  is, 4 is only for identification.  That is a good point. You're

4  right.

5  JUDGE TO MS. TRUJILLO

6      Q.   So, does the Government still have any objection to

7  Exhibit 4?

8      A.   Is that the Interpool document, Your Honor?

9      Q.   This is a memorandum.  Yes, to Interpool INS Liaison.

10     A.   No, I have no objection.

11     Q.   That will be admitted.

12  JUDGE TO MR. VAN DER HOUT

13     Q.   Anything further, the others are in?

14     A.   Exhibit 5 is in, 6 is in.

15     Q.   Right.  Five is in.  Okay, anything further, Mr. Van

16  Der Hout?

17     A.   No, Your Honor.

18  JUDGE FOR THE RECORD

19     All right.  The Court believes that deportability has been

20  established by clear, convincing and unequivocal evidence as

21  alleged and charged in the Order to Show Cause to include the

22  amended order at Exhibit 1-A.  The, deportability then is

23  established as indicated in the Order to Show Cause in the

24  judgment of this Court.

25  JUDGE TO MR. VAN DER HOUT

A 27 163 833          267          July 28, 1998

kws

1    Q.    Mr. Van Der Hout, what relief, if any, are you seeking

2  on behalf of your client?

3    A.    Off the record one moment.

4  JUDGE FOR THE RECORD

5    Off the record.

6                         (OFF THE RECORD)

7                         (ON THE RECORD)

8  JUDGE FOR THE RECORD

9    We're back on the record.  All parties are present.  It's

10  still July 28th, 1998.  The Court wishes to put a couple of other

11  points on the record pursuant to its ruling in this matter.

12  First of all, the Court knows that the burden is on the

13  Government to alienage.  The Government has shown that

14  respondent's specific claim to birth in Richmond, California is

15  not substantiated by any or known record.  Under Matter of Vivas,

16  16 I&N Dec. 68 (BIA 1977), in a situation like this to require

17  the Government to prove the negative, i.e., that the respondent

18  was not born anywhere else in the United States, would be perhaps

19  impossible, if not monumental task, whereas the burden on the

20  respondent is not considered unfair if, it would not be

21  considered unfair, a denial of due process to, to require him

22  after a prima facie showing which we certainly have from the

23  evidence in the record to include the respondent's own testimony

24  that there is some evidence of birth in the United States.  The

25  respondent has testified on that point, but offered no

A 27 163 833                    268                    July 28, 1998

000526

kws

1   corroborating documents that are of any persuasion to the Court.

2   And with regard to the respondent's testimony, the Court does

3   find that respondent has not been credible in terms of matters

4   that go to the heart of his claim, i.e., his birth in the United

5   States.  The Court finds that his testimony is replete with

6   retractions, with equivocations, lack of memory, lack of detail,

7   and statements that are both implausible and not credible in the

8   Court's view.  The Court will not attempt to identify all the

9   factors, but lead it to conclude that there's a lack of

10  credibility in the respondent.  I think even a cursory review of

11  the record, but the most recent one just as an illustration, that

12  is in the Court's mind, relates to the fact that respondent

13  testified that he originally that he didn't know where his mother

14  was living, and today, he testified that she was visiting him

15  from the United Kingdom and her name was, he used her name,

16  Susan, on a tax return, even though her name was Margaret.  Other

17  aspects of his testimony are simply internally at odds with prior

18  testimony that the respondent made or simply not plausible in the

19  course of ordinary human experience.  But the Court notes for

20  example, that the respondent says that today, that he has

21  brothers and sisters living in the United Kingdom, but no idea

22  how or why they would be living there, even though he has spent

23  approximately two weeks with his mother visiting and also spent

24  some time with his brother visiting from England.

25      The respondent has further shown a readiness to manipulate

A 27 163 833                    269                    July 28, 1998

000527

kws

1    the legal process through the use of forms and names other than

2    his own documents, such as the passport and the false

3    identification, which he procured to apply for a social security

4    number.  In any event, I think I've given sufficient

5    illustrations of why I find that the respondent has not been

6    credible.

7         The Court is mindful of the fact that in respondent's

8    initial testimony, he has indicated that he was basically

9    unprepared and nervous when responding to the Government's

10   questions and perhaps to the Court's questions as well.

11   Nevertheless, respondent was clearly aware of the fact that he

12   was under oath and made, made some statements which he

13   subsequently retracted.

14   JUDGE TO MR. VAN DER HOUT

15        Q.   With that said and done, I should first ask you before

16   I ask you about relief, Mr. Van Der Hout, whether or not you wish

17   to designate a country in the event deportation is ordered?

18        A.   The Government has, I taketh, Your Honor, that absent

19   that, the Court would order him deported to the U.K., which the

20   Government has charged, even though they --

21        Q.   Well, the Government has charged U.K. or any other

22   foreign country in the amended charge.  So, that would be just to

23   the order.  It wouldn't necessarily be the U.K.  There is some

24   evidence that he might not even be in the U.K. according to the

25   records search that was done.  But, there's also evidence that he

A 27 163 833                    270                  July 28, 1998

000528

kws

1    is from the U.K.  But, I think the Government's charge in Exhibit

2    1-A lays it out in the amended obligation.  That would be gist of

3    the order.  The U.K. or some other, any other foreign country

4    that -- I, I think, do you have a suggestion in that regard, or,

5    or --

6         A.    Can we go off the record one moment, Your Honor?

7    JUDGE FOR THE RECORD

8         Off the record.

9                         (OFF THE RECORD)

10                        (ON THE RECORD)

11   JUDGE FOR THE RECORD

12        All right.  We're back on the record.

13   JUDGE TO MR. VAN DER HOUT

14        Q.    Mr. Van Der Hout, care to designate?

15        A.    We do designate Canada, Your Honor.

16        Q.    Canada, all right.

17   JUDGE TO MS. TRUJILLO

18        Q.    The Service have any motion in that regard?

19        A.    Yes, Your Honor.  I, I would ask that the United

20   Kingdom be designated, and in the alternative, Nigeria.  I, I

21   don't believe he has a right to go to Canada, and that anything

22   has been presented that would demonstrate that he has a right to

23   go there.

24   MR. VAN DER HOUT TO JUDGE

25        Q.    Well, Your Honor, he has a right under the regulations

A 27 163 833                        271                    July 28, 1998

000529

# EXHIBIT 9

Department of Justice
Office for Immigration Review

Falls Church, Virginia 22041

File:    A27-163-833 – San Francisco                    Date:

In re: MAGIYA, PRESTON *                                 NOV 1 8 2002

IN DEPORTATION PROCEEDINGS

APPEAL

ON BEHALF OF RESPONDENT: Nightingale, Zachary, Esquire

ON BEHALF OF SERVICE: Patricia Spaletta, Assistant District Counsel

The Immigration Judge neglected to prepare a separate oral or written decision in this matter and, therefore, the record will be remanded to the Immigration Judge for preparation of a full decision. *Matter of A-P-*, 22 I&N Dec. 468 (BIA 1999). The respondent and the Immigration and Naturalization Service should be served with a copy of the decision and should thereafter be given an opportunity to submit briefs in accordance with the regulations.

ORDER: The record is remanded to the Immigration Court for further proceedings consistent with the foregoing opinion.

_____
FOR THE BOARD

# EXHIBIT 10

## UNITED STATES DEPARTMENT OF JUSTICE
## EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
## IMMIGRATION COURT
## SAN FRANCISCO, CALIFORNIA

| | |
|---|---|
| Matter of )<br>)<br>**Preston MAGIYA** )<br>)<br>Respondent )<br>)<br>)<br>_____ ) | Date: July 15, 2003<br><br>File Number: **A27 163 833**<br><br><u>In Deportation Proceedings</u> |

Charges:    241(a)(2)–Remained in the United States for a time longer than permitted after admission as a nonimmigrant.
241(a)(9)–Failure to comply with the conditions of the nonimmigrant status of admission.

Application:   None.

<u>On Behalf of Respondent:</u>
Zachary Nightingale
Van Der Hout, Brigagliano & Nightingale
180 Sutter Street, 5th Floor
San Francisco, CA 94104

<u>On Behalf of the DHS:</u>
Jim Stolley
Office of the District Counsel
550 Kearny Street, Ste. 1000
San Francisco, CA 94108

## <u>DECISION OF THE IMMIGRATION JUDGE</u>

This case comes before the Court on remand from the Board of Immigration Appeals (BIA or Board) for preparation of a full decision. The undersigned Immigration Judge (IJ) was not the first judge assigned to this case. Proceedings commenced in San Francisco before Judge Leadbetter, whose 1988 decision to terminate proceedings was appealed by the Immigration and Naturalization Service (Service[1]) and vacated by the Board. *On remand in 1992, Judge* Leadbetter issued an order to administratively close proceedings after Respondent failed to appear at a master calendar hearing. In 1996, Judge Leadbetter granted the Service's motion to recalendar and Respondent was given another opportunity to obtain counsel. *See.* Tr. at 2. Respondent's motion to change venue was denied in 1996 by Judge Hornbach. In 1998, Judge Coupe took pleadings, presided over Respondent's individual hearing, and rendered his oral

---

[1] The Service was recently reorganized into the *Department of Homeland Security (DHS) by the* Homeland Security Act of 2002, Pub. L. No. 197-296, 116 Stat. 2135, effective March 1, 2003. The term "Service" is used here.

A27 163 833

decision on July 28, 1998, from which Respondent appealed. It is Judge Coupe's full decision that this Court is now ordered to prepare, on remand from the Board.

This Court has therefore reviewed the entire record of proceedings, including the transcript of hearing. Judge Coupe has made findings of fact and law on the record which are now the law of the case, and which the undersigned IJ has no jurisdiction to review. The evidence and findings of fact and law are summarized below.

## I. Background

The Service commenced deportation proceedings against Respondent, Preston MAGIYA, on April 25, 1988, by filing an Order to Show Cause (OSC) with the Immigration Court in San Francisco. *See* Ex. 1. The OSC charged Respondent with deportability pursuant to sections 241(a)(2) and 241(a)(9) of the Immigration and Nationality Act (INA or Act), as a nonimmigrant who remained in the United States for a time longer than permitted after admission, and who failed to comply with the conditions of his nonimmigrant status. The Service alleged that Respondent was admitted to the United States at Newark, New Jersey, on January 14, 1985, as a visitor from the United Kingdom. *See* Ex. 3A. Respondent submitted a delayed birth certificate indicating that he was born on August 28, 1963, in Richmond, California, supported by affidavits from an uncle and cousin. *See* Ex. 2.

At a hearing before Judge Coupe on April 29, 1998, Respondent, represented by counsel, conceded proper service of the OSC, denied the factual allegations contained in the OSC, and denied deportability. *See* Tr. at 16. Respondent took the position that he is a United States citizen by birth and that the Court therefore lacked jurisdiction over him. *See* Ex. 2; Tr. at 16. The Service proffered several documents that the Court marked for identification as Group Exhibit 3, sub-exhibits A through P. *See* Tr. at 17, 67-71. Respondent raised objections to several of them. Respondent offered several documents without objection by the Service that were marked into the record as Exhibits 4-7. *See* Tr. at 160-66. Judge Coupe's findings on admissibility and evidentiary weight are discussed below.

The Service called three witnesses: Dennis Dilley, INS Special Agent; Michael Smirnoff, Chief of San Francisco INS Investigations; and Respondent.[2] Respondent, through counsel, cross-examined each witness.

Exhibits in the record of proceeding include the following:
Ex. 1–OSC;
Ex. 1A–Revised allegation 2 to the OSC;

---

[2] Respondent's counsel objected to Respondent's being called as a witness on the grounds that the Service had not established he was a non-citizen and that he was not included on the Service's witness list. Judge Coupe overruled the objections, finding that Respondent was on oral notice that he would be called to testify, and that a party in interest must expect to be called and asked questions, saying, "That's fundamental." *See* Tr. at 167-69.

A27 163 833                                    2

Ex. 2–Delayed Registration of Birth, filed June 23, 1986;

Ex. 3 for identification–Service revised list of witnesses, filed April 24, 1998;

Ex. 3A–Form I-213, Record of Deportable Alien;

Ex. 3B–NIIS Report dated April 18, 1988;

Ex. 3C–Application for Social Security Card dated January 18, 1985;

Ex. 3D–Application for Social Security Card dated February 26, 1985;

Ex. 3E–Copy of Delayed Registration of Birth, filed June 23, 1986;

Ex. 3F–Application for Social Security Card dated July 18, 1986;

Ex. 3G–Letter from David Mitchell, Chief, Office of the State Registrar, to Dennis
Dilley, dated May 16, 1988;

Ex. 3H–Certification of No Record;

Ex. 3I–Crocker Bank records;

Ex. 3J for identification–Affidavit of Ira Lee Berry;

Ex. 3K–Delayed Registration of Birth issued September 9, 1991;

Ex. 3L–Memorandum to file dated December 9, 1991;

Ex. 3M–Letter from David Mitchell to Michael Smirnoff dated December 23, 1991;

Ex. 3N–Certified copies of conviction documents;

Ex. 3O–Questioned document analysis by San Francisco Police Department dated
January 29, 1988;

Ex. 3P–Service fingerprint examiner's report dated April 21, 1988 (California
identification card and driver license attached);

Ex. 4–Memorandum from DIINV/SFR to Interpol/INS Liaison dated April 22, 1988;

Ex. 5–Letter from Joseph F. Brandon, INS Assistant District Director for Investigations,
to Billee Snider, Office Services Supervisor, California Department of Social Services, dated
April 21, 1988;

Ex. 6–Memorandum to file dated April 29, 1988;

Ex. 7–Letter from Joseph F. Brandon, INS Assistant District Director for Investigations,
to Elliott R. Kramer, Regional Inspector General for Investigations, Department of Health &
Human Services, dated April 4, 1988.

## II.  Facts

### A. Testimony of Respondent Preston Magiya.

Respondent testified that his name is Preston Ochucko Magiya; that he also used the last
names Amagiya and Hudson; that he also used the middle names Chucks and Ogheneochuko;
and that he could not remember using the name Amagiya Prestone. Tr. at 170-71. He testified
that his mother's name is Margaret Ombne and that he was told she was born in Kansas. Tr. at
171-72. He testified that his father's name is Sampson Magiya; Respondent never knew his
father, who, he testified, was born in Illinois. Tr. 172, 178, 187. When asked if he had any
siblings, Respondent first testified, "I believe so, but I'm not sure." Tr. at 173. He later testified
that he was told he had two brothers, Ojiyoma and Mark, and one sister, Ejiro. Tr. at 217, 246.
Respondent's brother Ojiyoma came and visited him in Los Angeles in early 1997. Tr. at 215-

A27 163 833

3

16.  Respondent testified that he knew his mother was alive because he had spoken to her by phone in 1996 or 1997; he did not ask where she was calling from and did not know where she was.  Tr. at 178.  He testified that he last saw his mother in Los Angeles in 1996 or 1997.  Tr. at 178.  He testified that she flew in from England for about two weeks to visit him.  Tr. at 254.

Respondent testified that he listed two dependents on his 1985 tax return in the exemption section for listing dependent children.  Tr. at 252-53.  According to his testimony, "Susan" was his mother, whose name is Margaret and whose middle name is Susan; "Mark" was his brother; neither claimed dependent lived with him in 1985.  Tr. at 252-53.  Respondent's 1986 tax return listed "Mack" as a dependent; Respondent testified that he did not intend to name his brother on the tax return, but wrote down a name "just to get a dependent."  Tr. at 252-53.

Respondent testified that he was born on August 20, 1963, in Richmond, California, and raised by his paternal grandmother, Bobo Magiya, who passed away some time in the early 1980s.  Tr. at 171-72.  He testified that until he was about 13 years old, he believed that Bobo Magiya was his birth mother.  Tr. at 203.  Respondent testified that when he was 13 or 14 years old, Bobo handed him over to his uncle Ira Perry; he lived in Los Angeles with his uncle for a couple of months and then they moved to Oakland.  Tr. at 205-06.  He testified that he lived with his uncle on Jackson Street in Oakland for about three years, then moved into his own apartment on 29th Street where he lived from approximately 1981-88; his uncle lived with him there for a time in 1985-86.  Tr. at 206-11.

Respondent testified that he could not remember attending school in the United States or any other country, saying, "I was taught at home by my grandmother, so, that's probably what I can remember."  Tr. at 173-74.  He testified that his grandmother pulled him out of school in 1971 or 1972, telling him that the world was going to end in 1979.  Tr. at 208.  Respondent testified that he attended community college full-time at the College of Alameda beginning in 1985; he did not recall filling out an application or providing any proof of prior schooling, but he "did have some tests."  Tr. at 188, 190, 220.  He testified that he got a degree from College of Alameda and a Bachelor of Science degree from the California State University at Los Angeles in 1991.  Tr. at 189-90.  Respondent testified that he works as an accountant for a roofing company, and has for "about a couple of months."  Tr. at 189.  He testified that he looked in the newspaper, saw that most of the jobs advertised were for accountants, asked some friends how to become an accountant, was told he needed to go to school, and went to College of Alameda to register; he was asked for identification, which he did not then have.  Tr. at 220-21.  Respondent testified that he bought a passport and a driver license in the name of "Preston Hudson" from a friend, used them to apply for a social security card, and then returned them to his friend.  Tr. at 221-24, 227-28.

Respondent testified that he had never had a United States passport, never used a passport from any other country, never represented to anyone that he had a passport from the United Kingdom and never represented to anyone that he was born either in London, England, or Nigeria.  Tr. at 187, 190-91.

A27 163 833                                        4

Respondent testified that he applied for a social security card more than once, but could not remember how many times. Tr. at 179, 181-82. He testified that "it's possible" that the signatures on Exhibits 3C and 3D were his own, "but it's been awhile." Tr. at 179-81. Respondent later testified that he did, in fact, sign and submit Exhibit 3C under the name "Preston Ochucko Hudson Amagiya." Tr. at 223-25; *see* Ex. 3C. Respondent further testified that he signed and submitted Exhibit 3D. Tr. at 226; *see* Ex. 3D. He testified that he bought British passport number C023544D from a friend and used it on both applications. Tr. at 226-27.

Respondent testified that he recognized the signature on the California identification card for "Preston Hudson Amagiya" as his own. Tr. at 184; *see* Ex. 3P. Respondent also testified that the driver license with the names "Preston Amagiya" and "Preston Ogheneochuko" was his. Tr. at 185; *see* Ex. 3P. He further testified that he used British passport number C023544D and a driver license in the name of "Preston Hudson," purchased from a friend, to get his California driver license and identification card. Tr. at 231-32; *see* Ex. 3P. Respondent testified that he had an account in the 1980s with the Crocker Bank and that the signature on Exhibit 3I was his. Tr. at 186-87. When questioned as to why the Crocker Bank taxpayer identification card listed his place of birth as Illinois, he testified that the Crocker Bank employee who filled out the form asked him where his father was born. Tr. at 201-02.

Respondent testified that he had applied for a birth certificate in the United State twice, the first time in the early 1980s. Tr. at 187-88. Respondent testified that when he obtained a Delayed Registration of Birth in 1986, he submitted a bank record and signatures from Ira Lee Perry, his uncle, and Laura Kenney, "probably a cousin" who Ira knew very well, in support of his application. Tr. at 192-93, 234; *see* Ex. 2. Respondent further testified that he has no idea where his uncle is now. Tr. at 193. He tried to contact his uncle in 1988 without success. Tr. at 212-13. He testified that he called his uncle "Ira," but when Ira signed the birth registration application, he used the middle name "Lee." Tr. at 239-40.

Respondent testified that he knew an Ira Lee Berry from Oakland who was born in 1964, a friend from College of Alameda whom he knew as "Tony." Tr. at 191-92, 237. Respondent testified that he learned Tony's full name when he saw it on his paper during a mid-term exam. Tr. at 237. Respondent testified that it came to his attention in 1988 that his classmate was Ira Lee Berry, Jr., after somebody came by and questioned Tony's father, Ira Lee Berry, Sr., about Respondent. Tr. at 237-38.

Respondent testified that he applied for a second Delayed Registration of Birth around 1991 after an unsuccessful attempt to obtain a United States passport. Tr. at 234-35, 241. When he had first tried to apply for a United States passport, Respondent received a Certificate of No Record and an application to file for a new birth record. Tr. at 235; *see* Ex. 3H. Respondent testified that he obtained an affidavit in support of his second Delayed Registration of Birth from his uncle, Halims Olene, a man he met in a class at College of Alameda, who told Respondent that he was related to his mother. Tr. at 235-36.

A27 163 833

5

000101

Respondent testified that his birth mother contacted him for the first time by calling him on the telephone in 1990 or 1991. Tr. at 214-15, 243-44. He saw her for the first time in 1991 and for the last time in 1997, but he does not know where she lives or how to contact her; he testified that his relationship with her is not close. Tr. at 217-18. He testified that his grandmother must have given her his phone number before she died. Tr. at 214-15. Respondent testified that in 1997 he was aware that he was in immigration proceedings and the main issue was whether he was born in the United States, but he did not ask his mother for a declaration because they did not have a close relationship and he did not want to bring back past memories. Tr. at 218-19. He further testified that he had "no idea" how his siblings happened to be living in England. Tr. at 241-42.

B. Testimony of Dennis Dilley.

Special Agent Dennis Dilley testified that he had been employed by the Service for 22 years and was authorized to investigate violations of the Act. He testified that he developed some of the information contained in the I-213–a synopsis of the events leading to the encounter and subsequent arrest of Respondent–and prepared the addendum to it. Tr. at 27; see Ex. 3A. Mr. Dilley identified Exhibits 3C, 3D, and 3F (applications for Social Security numbers), and testified that he obtained them from the Social Security Administration from a search request either by Social Security number or by name. Tr. at 28-36. Mr. Dilley testified that he investigated the information shown in Respondent's Delayed Registration of Birth. Tr. at 37; see Ex. 2. He testified that he located Ira Lee Berry, shown on the registration as Respondent's uncle, interviewed him at an address different from that shown on the registration, and took his affidavit. Tr. at 37-39. Mr. Dilley identified the signature card from Crocker Bank as a document he had obtained from the bank. Tr. at 48-49; see Ex. 3I (a copy certified by the Service as contained in Respondent's file).

Mr. Dilley testified that he had a conversation with Ms. Billee Snider, Office Services Supervisor, California Department of Social Services, about what information would be necessary to seal the record of Respondent's delayed registration of birth, and received a follow-up letter from David Mitchell. Tr. at 52-53; see Ex. 3G. He testified that the Certification of No Record was issued by the State of California as a consequence of the Service investigation, and that he received the certificate himself; he testified that he provided information to the State of California and that they based their decision to seal the record at least in part on the information he provided. Tr. at 53-54; See Ex. 3H. He testified that the facts he developed in his investigation of Respondent were not referred to a U.S. Attorney's office nor were criminal fraud charges filed against Respondent by the federal government.[3] Tr. at 91-92.

Mr. Dilley was shown Exhibit 3B; he explained that the Non-Immigrant Information System (NIIS) is a database that records the entry of aliens into the United States. He testified

---

[3] Respondent was convicted in March 1988 in California Superior Court, County of San Francisco, of one count of violating California Penal Code § 475(a), possession of bad check with intent to defraud. See Ex. 3N.

that the report for "Preston Hudson" was run using the admission number cited in the narrative of the I-213 (the number that appeared on the I-94) and that it is his customary practice to run checks on all listed aliases. Tr. at 56-57, 59. Mr. Dilley also testified to receiving a memo on the results of a fingerprint comparison of two California driver licenses done by another Service investigator, who concluded that the fingerprints were made by the same person. Tr. at 63-64; *see* Ex. 3P. Mr. Dilley confirmed that he was the author of Exhibits 4, 5 (for Mr. Brandon's signature), 6, and 7 (for Mr. Brandon's signature). Tr. at 157, 159, 162-64.

### C. Testimony of Michael Smirnoff.

Michael Smirnoff testified that he had worked for the Service since 1971 and was section chief of the criminal section for the San Francisco investigations branch and had held that position for about four years; prior to that, he was chief of the fraud section, focusing on counterfeit documents. Mr. Smirnoff testified that he prepared the I-213 as a synopsis of an interview he conducted with "Preston Hudson Amagiya" at the San Francisco County jail, who he identified as Respondent. Tr. 103-04, 106; *see* Ex. 3A. Mr. Smirnoff testified that during their interview, Respondent told him that he was a United States citizen born in Richmond, California, but based on his years of experience dealing with false claims to citizenship, Mr. Smirnoff did not believe that Respondent was telling him the truth. Tr. at 106-07.

Mr. Smirnoff testified that he subsequently contacted the California Department of Vital Statistics in Sacramento and asked whether there was a record of birth for Respondent in Richmond, California; he was told there was not. Tr. at 107-08. Mr. Smirnoff also testified that he contacted the California Department of Motor Vehicles (DMV) and was told what they had on record: Respondent, the subject of the I-213, and "Preston O. Hudson Amagiya," birth date November 5, 1964, were the same person. Tr. at 108, 141-43. Mr. Smirnoff testified that when there are different records with different names and dates of birth, the DMV gets a fingerprint expert to look at the print submitted along with the application; at the time of his call, the DMV already had the information concerning Respondent. Tr. at 151-54. He testified that the fingerprint examination report was prepared by John P. Lee, who is no longer working for the Service. Tr. at 109; *see* Ex. 3P. Mr. Smirnoff testified that as part of his routine duties, he would have gone to the police records department and requested any and all reports relating to the particular incident, and that Exhibit 3O could have been part of the police investigation relating to the criminal charge against Respondent; he did not recall seeing it. Tr. at 110-11.

Mr. Smirnoff testified that the December 9, 1991 Memorandum of Investigation concerning Respondent was written by him and referenced the second Delayed Registration of Birth. Tr. at 112-13; *see* Ex. 3K, 3L. He testified that he was told by a representative of the California Department of Health and Human Services that the second registration would be sealed, as had been the first, and that it had been issued in error. Tr. at 113-16. Mr. Smirnoff testified that the letter from David Mitchell dated December 23, 1991, was issued at his request to confirm that the second delayed registration of birth had been sealed. Tr. at 115; *see* Ex. 3M. Mr. Smirnoff testified that he also became involved in an investigation of fraudulent student

A27 163 833

7



loans relating to Respondent's claim to United States citizenship, and that his investigation uncovered the social security records.[4]  Tr. at 118.

Mr. Smirnoff testified that, knowing that an individual was using multiple identities and different Social Security numbers, he went to the Social Security Administration to find out what proof of identity was put on the applications. Tr. at 120-21; *see* Ex. 3C [British passport number C023544D, Preston Ogheneochuko Hudson]; Ex. 3D [British passport C023544D, Preston Amagiya].  He testified that it was his opinion, based on his investigation, that Respondent was a British citizen.  Tr. at 135.  A memorandum from Mr. Dilley to Interpol indicated that a search of United Kingdom passport records on Respondent was negative.  Tr. at 136-37; *see* Ex. 4.  Mr. Smirnoff testified that a report from a foreign authority that there was no record of a given passport does not necessarily mean that the passport was never issued.  Tr. at 147-48.

D. Documentary Evidence.

With the exception of Exhibit 3J, which was excluded entirely from consideration, Exhibit 3O, which was given very little weight, and the paragraph entitled "Bond Factors" in Exhibit 3A, which was not considered, all exhibits offered by the parties were admitted into evidence and given full evidentiary weight.[5]  *See* Tr. at 262-65.

Respondent submitted applications for Social Security cards on January 18, 1985 and February 26, 1985.  Ex. 3C; Ex. 3D.  Respondent testified that he signed and submitted these applications.  Tr. at 223-26.  On their face, the Social Security card applications indicate that Respondent used a British passport, I-94 number and bank documents as evidence of his identity.  Ex. 3C; Ex. 3D.  Respondent confirmed that he had used British passport number C023544D, purchased from a from a friend, on both applications.  Tr. at 226-27.

On January 22, 1985, a California identification card was issued to "Preston O. Hudson-Amagiya."  Ex. 3P.  On March 11, 1985, a California driver license was issued to "Preston Amagiya."  Ex. 3P.  Exhibit 3P indicates that the fingerprints on the California identification card and California driver license came from the same person.  Ex. 3P.  Respondent authenticated the identification card and driver license and indicated that he is that person.  *See* Tr. at 184-85.  Respondent further testified that he used the same British passport he used on the Social Security card applications to obtain his California identification card and driver license.  Tr. at 231-32.

The documents indicate that Respondent next filed for and received his first Delayed Registration of Birth from the California Department of Health Services' Office of State Registrar of Vital Statistics in the name of "Preston Chucks Magiya" on June 23, 1986.  Ex. 2.

---

[4]  Mr. Smirnoff initially testified that he believed Respondent had been convicted for student loan fraud. No record of any such conviction was entered into evidence. *See* 8 C.F.R. § 1003.41.

[5]  Judge Coupe's findings with respect to the documentary evidence are discussed below at Section III.A.

A27 163 833

8

Respondent submitted a Crocker Bank record in support of his application for a Delayed Registration of Birth. Ex. I. His testimony confirmed that the application for delayed registration was filed and the bank record submitted in support. Tr. at 192-93, 234.

On its face, the Crocker Bank record lists Respondent's place of birth as "Ill." Ex. I. Also on its face, the Crocker Bank record requires no parental information except the applicant's mother's maiden name. Ex. I. Respondent testified that a Crocker Bank employee filled out the form and asked him where his father was born (to which he responded: Illinois) by way of explaining the discrepancy between the Crocker Bank record and his asserted place of birth in Richmond, California.[6] Tr. at 186-87, 201-02.

On July 18, 1986, using Exhibit 2 (Delayed Registration of Birth, filed June 23, 1986) as a supporting document, Respondent applied for and received a third Social Security card. Ex. 3F.

On April 26, 1988, the Office of State Registrar of Vital Statistics issued a Certification of No Record for "Preston Chucks Magiya" after searching for a birth certificate issued during the period 1962 to 1964. Ex. 3H. In a letter dated May 16, 1988, David Mitchell, Chief of the Office of State Registrar informed INS Special Agent Dennis Dilly that the State of California had sealed Respondent's first Delayed Registration of Birth "on the basis of information and records obtained during a criminal investigation, that the record was filed with fraudulent documents and affidavits." Ex. 3G.

On September 9, 1991, Respondent filed for and received a second Delayed Registration of Birth from the California Department of Health Services' Office of State Registrar of Vital Statistics in the name of "Preston Ochuko Magiya." Ex. 3K. Respondent submitted his third Social Security card number, 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, in support of the application. Ex. 3K; see Ex. 3F.

In a letter dated December 23, 1991, David Mitchell, Chief of the Office of State Registrar informed INS Supervisory Special Agent Michael Smirnoff that the State of California had sealed Respondent's Delayed Registration of Birth "on the basis of information received in this office, that it was fraudulently filed. Fraudulent affidavits and documents were submitted to file the record." Ex. 3M.

### III. Discussion

In deportation proceedings, the Immigration Judge is not bound by the strict rules of evidence. Hearsay and second-hand evidence may be admissible, but need not be admitted if more reliable and probative evidence is available. *See* Tr. at 77.

---

[6] The Court notes that Respondent's explanation was not refuted, but it does not conform to the information requested on the face of the Crocker Bank document, which Respondent signed. Tr. at 201. The Court also notes that the Crocker Bank document incorrectly shows Respondent's newly-obtained Social Security number (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) as 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. *Compare* Ex. 3D *with* Ex. 3I. No testimony was taken with respect to this discrepancy.

000105

Judge Coupe excluded Exhibit 3J (Affidavit of Ira Lee Berry) from consideration on the grounds that Respondent had no opportunity to cross-examine Mr. Berry and that the Service had not made all reasonable efforts to produce him as a witness at Respondent's hearing. Tr. at 262; *see Saidane v. INS*, 129 F.3d 1063, 1065 (9th Cir. 1997) (holding that failure by the government to make a reasonable effort to afford an alien a reasonable opportunity to confront the witnesses against him or her renders the hearing fundamentally unfair). Exhibit 3O (Questioned document analysis by San Francisco Police Department dated January 29, 1988) was admitted but given very little weight. Tr. at 263-64. Judge Coupe found Exhibit 3A (Form I-213, Record of Deportable Alien) sufficiently authenticated by testimony and not of any significant unreliability; the paragraph entitled "Bond Factors" was not considered, but Exhibit 3A was otherwise given full evidentiary weight. Tr. at 264-65. All other exhibits submitted to the Court were given full evidentiary weight. Tr. at 265-67.

Respondent's Delayed Registries of Birth, dated June 13, 1986 and September 9, 1991, were each sealed by the State of California. Judge Coupe found that, while some of the information provided by the Service to the State of California regarding Respondent's second Delayed Registration of Birth led to its sealing, the State made its own decision to seal the record. Tr. at 265. Judge Coupe understood the actions taken by the State to be its own, based upon its determination that each application was based upon fraudulent documents. Tr. at 265; *see* Ex. 3G; Ex. 3M. Judge Coupe did not consider the delayed birth records as evidence probative of Respondent's citizenship and found that Respondent's specific claim to birth in Richmond, California, was unsubstantiated by any known record. Tr. at 268.

Judge Coupe further found that Respondent offered no documentary evidence to corroborate his testimony that he was born in Richmond, California. Tr. at 268-69. Judge Coupe found the situation analogous to *Matter of Vivas*, 16 I&N Dec. 68 (1977). Requiring the Service to prove the negative, i.e., that Respondent was not born anywhere else in the United States, would be a monumental, if not impossible, task. *Matter of Vivas*, 16 I&N at 70. The burden of going forward with the evidence is placed on a respondent not having the burden of proof when the respondent has better control or knowledge of the evidence and the Service makes a prima facie showing of its case. *Id.* Judge Coupe found that Respondent, by offering no evidence to corroborate his testimony that he was born in the United States, failed to meet his burden of going forward with the evidence. Tr. at 268-69. To place such a burden on Respondent was found neither unfair nor a denial of due process. Tr. at 268.

Judge Coupe therefore found that deportability was established by clear, convincing and unequivocal evidence as alleged and charged in the Order to Show Cause to include the amended order at Exhibit 1A. Tr. at 267.

With respect to Respondent's testimony, Judge Coupe found Respondent not credible in terms of matters that go to the heart of his claim, i.e., his birth in the United States. Tr. at 269. Judge Coupe found that Respondent's testimony was replete with retractions, equivocations, lack of memory, lack of detail, and statements that were both implausible and not credible. Tr. at 269.

A27 163 833

10

Judge Coupe noted, by way of illustration, that Respondent originally testified that he didn't know where his mother was living, then testified that she was visiting him from the United Kingdom, and that he called her "Susan" on his tax return, even though her name was Margaret.[7] Tr. at 269. Other aspects of Respondent's testimony were internally at odds with his prior testimony, or simply not plausible in the course of ordinary human experience. Tr. at 269. Judge Coupe noted, for example, that on the last day of the hearing, Respondent testified that he had brothers and sisters living in the United Kingdom, but no idea how or why they should be living there, even though he spent approximately two weeks with his mother visiting from England and also spent some time with his brother visiting from England.[8] Tr. at 269. Judge Coupe also found that Respondent had shown a readiness to manipulate the legal process through the use of forms and names other than his own documents, such as the passport and the false identification that he procured to apply for a social security number. Tr. at 269-70. Judge Coupe found that despite Respondent's initial lack of preparation and nervousness, Respondent was clearly aware that he was under oath and made some statements that he subsequently retracted. In sum, Judge Coupe found Respondent not credible. Tr. at 270.

In light of the foregoing, the following order will be entered:

---

[7] Judge Coupe said that he would not attempt to identify all instances that led him to conclude that Respondent lacked credibility, but indicated that "even a cursory review of the record" supported his finding. Tr. at 269. The Court notes the following: 1) Respondent first stated that he had never used another passport, then testified that he had used a British passport to apply for Social Security cards and identification from the California Department of Motor Vehicles. Tr. at 187, 190-91, 221-33. 2) Respondent testified that he was home-schooled by his grandmother and had no memory of attending school until he applied for admission to the College of Alameda; then he testified that he was attempting to obtain school records from Los Angeles to establish his United States citizenship. Tr. at 173-74, 207-08, 243. 3) Respondent testified that his mother first contacted him in 1991, when he was living in Los Angeles, and that she must have gotten his phone number from his grandmother; yet he testified that his grandmother died between 1982 and 1984, at which time Respondent was still living in Oakland; Respondent did not move back to Los Angeles until after his grandmother's death. Tr. at 171-72, 214-15, 243-45.

[8] Though Judge Coupe only cited one example here, as above, the record is replete with instances in which Respondent's testimony was not plausible in the course of ordinary human experience. Tr. at 269. The Court notes the following: 1) On its face, Exhibit 2, Respondent's first Delayed Registration of Birth, includes an affidavit of support signed by "Ira Lee Berry," identified as Respondent's uncle; Respondent explained that his uncle's name is actually "Ira Lee Perry"; Ira Lee Berry happened to be a classmate of his at College of Alameda, and Ira Lee Berry, Sr., who was contacted by the Service, was his classmate's father; Respondent further testified that he does not know the whereabouts of his uncle, Ira Lee Perry. Tr. at 191-94, 211-13, 234, 237-40; see Ex. 2. 2) Exhibit 3K, Respondent's second Delayed Registration of Birth, includes an affidavit signed by Halims Olene, identified as Respondent's uncle; Respondent testified that he met this uncle in a class at College of Alameda; Respondent testified that he heard the name "Olene" called in class and then the man said he was related to Respondent's mother; Respondent did not know where this uncle was at the time of his hearing but believed that he was in prison. Tr. at 235-37.

000107

## ORDER[9]

IT IS HEREBY ORDERED that Respondent, Preston MAGIYA, be deported to the United Kingdom.

IN THE ALTERNATIVE, if Respondent is able to establish that he has a right to be admitted to Canada within a reasonable time of this order, IT IS ORDERED that Respondent be deported to Canada.

IN THE ALTERNATIVE, IT IS ORDERED that Respondent be deported to any other country to which Respondent can establish his ties or his last exit therefrom, or that will accept Respondent.

Miriam Hayward
United States Immigration Judge

---

[9] *See* Tr. at 280.

A27 163 833                              12

000108

# EXHIBIT 11

Decision of the Board of Immigration Appeals

**U.S. Department of Justice**
Executive Office for Immigration Review

Falls Church, Virginia 22041

File:  A27 163 833 - San Francisco                    Date:      DEC 1 6 2004

In re:  PRESTON MAGIYA a.k.a. Preston Hudson-Amagiya a.k.a. Preston Hudson

IN DEPORTATION PROCEEDINGS

APPEAL

ON BEHALF OF RESPONDENT:   Zachary Nightingale, Esquire

ON BEHALF OF DHS:      Joseph Y. Park
                      Assistant Chief Counsel

CHARGE:

    Order:   Sec.   241(a)(2), I&N Act [8 U.S.C. § 1251(a)(2)] -
                 Nonimmigrant - remained longer than permitted

            Sec.   241(a)(9), I&N Act [8 U.S.C. § 1251(a)(9)] -
                 Nonimmigrant - failed to comply with conditions of status

APPLICATION:  Termination of proceedings

ORDER:

    PER CURIAM.  The respondent's alienage is contested.  The respondent has appealed the Immigration Judge's July 15, 2003, decision finding that the respondent's deportability had been established by clear, convincing, and unequivocal evidence, as alleged and charged in the Order to Show Cause, including the amended Order to Show Cause at Exhibit 1A. *See* Tr. at 267; *see also* I.J. (7-15-2003), at p.10.  The respondent's appeal will be dismissed.

    We adopt and affirm the decision of the Immigration Judge with the following additions. *See Matter of Burbano*, 20 I&N Dec. 872, 874 (BIA 1994) (noting that adoption or affirmance of a decision of an Immigration Judge, in whole or in part, is "simply a statement that the Board's decision upon review of the record coincide with those the Immigration Judge articulated in his or her decision").  Initially, we note that the Immigration Judge's adverse credibility finding is amply supported by the record, and the respondent has failed to establish that such finding is clearly erroneous. *See Wang v. INS*, 227 352 F.3d 1250, 1258 (9th Cir. 2003) (finding that inconsistencies in the record adequately supported the adverse credibility finding); *see also Kamalthas v. INS*, 251 F.3d 1279, 1284 (9th Cir. 2001); *Kataria v. INS*, 232 F.3d 1107, 1114 (9th Cir. 2000); *Bendari v. INS*, 227 F.3d 1160 (9th Cir. 2000); 8 C.F.R. § 1003.1(d)(3)(i); *Matter of R-S-H-*, 23 I&N Dec. 629 (BIA 2003).

000002

A27 163 833

The respondent avers, on appeal, that there were multiple errors with respect to the admission of evidence in his case. We note that a deportation hearing is an administrative proceeding not bound by strict rules of evidence. *See De Hernandez v. INS*, 498 F.2d 919, 921 (9th Cir. 1974). The respondent specifically avers that the Immigration Judge erred in admitting Exhibit 3A, a Form I-213 (record of deportable alien). The sole test for admission of evidence is whether the evidence is probative and its admission is fundamentally fair. *See Trias-Hernandez v. INS*, 528 F.2d 366, 369 (9th Cir. 1975). The United States Court of Appeals for the Ninth Circuit, in which jurisdiction the instant case arises, has held that a Form I-213 is probative on the issues of entry and alienage, and its admission is fair absent evidence of coercion or that the statements are not those of the alien or petitioner. *Id*; *see also Espinoza v. INS*, 45 F.3d 308, 311 (9th Cir. 1995). We find that the admission of the Form I-213, in the instant case, which was certified by a district director, was probative and fundamentally fair. We agree, with the Immigration Judge, that such form was properly authenticated, through certification and by the testimony of Mr. Dilly and Mr. Smirnoff. *See* 8 C.F.R. § 1287.6(a); *see also* Tr. at 26-28, 103-109, 134, 142-143, 264. We find that the explanation, concerning the difference in the dates, on the Form I-213 and on the Non-Immigrant Information System report (NIIS report), has been adequately explained. *See* Tr. at 142-143 (Mr. Smirnoff testified that he recalled having to pull the NIIS report on several occasions, and that such report was possibly printed on one of the later occasions, after it was referenced in the I-213); *see also* Exhs. 3A, 3B. We do not find that there is evidence of coercion or that the Form I-213 is otherwise unreliable.

The respondent contests the admission of Exhibit 3I, a bank record from Crocker Bank. However, we note that the respondent admits that he had an account with Crocker Bank and that the signature on this specific record is his own. *See* Tr. at 186. Thus, we do not find that the admission of such record is fundamentally unfair nor that the use of such record is inappropriate for impeachment purposes. *See Trias-Hernandez v. INS, supra.*

With regard to Exhibits 3G and 3M, these are both letters from David Mitchell, at the Department of Health Services, concerning the sealing of the respondent's two delayed birth registration certificates. These are public records or reports, created by a public officer. Thus, they are presumed to be trustworthy. *See generally* Fed. R. Evid. 803(8). Mr. Dilly and Mr. Smirnoff testified to having each received one of these letters and to having conversations with the Department of Health Services regarding the sealing of the birth registration certificates and the purpose for the sealing of such certificates. *See* Tr. at 52-53, 115-116. The record reflects that the letters have been certified by a District Director as records relating to the respondent. The letters indicate that the delayed birth registrations were sealed based on information obtained during a criminal investigation, indicating that the records were filed with fraudulent documents and affidavits. *See* Exhs. 3G, 3M. Considering the testimony presented, regarding the source and receipt of such letters, and the certification that such letters were from the records kept by the DHS, which pertain to the respondent, we do not find that the admission of such letters was fundamentally unfair. *See Trias-Hernandez v. INS, supra.* Such letters were considered, by the Immigration Judge, as a record of what the State of California had done with regard to the sealing of the respondent's delayed birth registration certificates. *See* Tr. at 265. Thus, we find that such letters were properly admitted into evidence.

2

A27 163 833

   With respect to other evidentiary issues presented by the respondent, we do not find that the respondent has established that the admission, of any of the documents which are at issue, was fundamentally unfair.

   The Form I-213, in the record, indicates that the respondent was born in the United Kingdom, and that he was admitted as a visitor (with a B-2 visa) on January 14, 1985. *See* Exh.3A. The NIIS report also contains this information. *See* Exh.3B. The respondent initially testified that he had never used a British passport. *See* Tr. at 187. The respondent additionally testified that he had never represented to anyone that he had a passport from the United Kingdom. *See* Tr. at 191. The respondent subsequently admitted to having obtained a passport, but testified that he did not know the issuing country. *See* Tr. at 221-222. Yet, the respondent later admitted that he knew that it was a British passport, and that he had bought such passport on the street. *See* Tr. at 226. Thus, the respondent offered drastically different statements with regard to whether he had obtained or used a British passport. The respondent admitted submitting and signing Exhibits 3C and 3D, which are two different applications for social security cards and which both indicate that the respondent was born in London, England. *See* Tr. at 223-227. The respondent testified that his mother and siblings were all living in England. *See* Tr. at 241-242, 254-255. We further note that the respondent's counsel initially indicated that the respondent was "prepared to plead he's [sic] United Kingdom." *See* Tr. at 13. In sum, we find that the evidence admitted into the record, in addition to the adverse credibility finding, sufficiently support the Immigration Judge's determination that the Department of Homeland Security (the "DHS," formerly the Immigration and Naturalization Service) met its burden of proof with respect to establishing the respondent's deportability.

   Accordingly, the respondent's appeal is dismissed.

FOR THE BOARD

3

000004

# EXHIBIT 12

Zachary Nightingale (California Bar #184501)
Marc Van Der Hout (California Bar #80788)
Avantika Shastri (California Bar #233453)
Van Der Hout, Brigagliano & Nightingale, LLP
180 Sutter Street, Fifth Floor
San Francisco, California 94104
Telephone: (415) 981-3000
Facsimile: (415) 981-3003
Email: ndca@vblaw.com

Attorneys for Petitioner
Preston MAGIYA

UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO

| | |
|---|---|
| Preston MAGIYA<br><br>　　　　Petitioner,<br><br>　　　　　　v.<br><br>Alberto GONZALES<br><br>　　　　Respondent. | Case No. 3:07-cv-02945-CRB<br><br>**PETITIONER'S INITIAL DISCLOSURES** |

1   Pursuant to Fed. R. Civ. P. 26(a), Petitioner makes the following initial disclosures:

2   A.  The name, and if known, the address and telephone number of each individual likely to have
        discoverable information that the disclosing party may use to support its claims or defenses,

3       unless solely for impeachment, identifying the subjects of the information:

4
            Petitioner does not intend to offer any witnesses at this time.  He intends to proceed on his

5           own testimony.  Petitioner will inform Respondent if and as soon as he identifies
            additional witnesses that he may use to support his claims.

6

7   B.  A copy of, or description by category and location of, all documents, electronically stored
        information, and tangible things that are in the possession custody, or control of the party and

8       that the disclosing party may use to support its claims or defenses, unless solely for
        impeachment.

9

10          1.  At this time, Petitioner intends to rely on the following documents, which were
                filed before the Immigration Court and are contained in the administrative record

11              before the Ninth Circuit Court of Appeals in Case no. 05-70297:

12                  a.  Delayed Registration of Birth, filed June 23, 1986
                    b.  Memorandum from DIINV/SFR to Interpol/INS Liaison dated April 22,

13                      1988
                    c.  Letter from INS Assistant District Director for Investigations to California

14                      Department of Social Services dated April 21, 1988
                    d.  Memorandum to file dated April 29, 1988

15                  e.  Letter from INS Assistant District Director for Investigations to Regional
                        Inspector General for Investigations, Department of Health and Human

16                      Services dated April 4, 1988

17              Undersigned counsel submits a copy of these documents with these initial
                disclosures to Respondent.

18
            2.  Petitioner may use additional documents in support of his testimony.  He will

19              disclose these documents as soon as they are identified.

20

21  C.  A computation of any category of damages claimed by the disclosing party, making available
        for inspection and copying as under Rule 34 the documents or other evidentiary material, not
        privileged or protected from disclosure, on which such computation is based, including

22      materials bearing on the nature and extent of injuries suffered;

23
            No monetary damages are at issue in this case.

24

25  D.  For inspection and copying as under Rule 34 any insurance agreement under which any
        person carrying on an insurance business may be liable to satisfy part or all of a judgment

26      which may be entered in the action or to indemnify or reimburse for payments made to satisfy
        the judgment:

27
            No indemnification or reimbursement for payments is at issue in this case.

28

Petitioner's Initial Disclosures                    1                    Case No. 3:07-cv-02945-CRB

1    Dated: September 12, 2007                    Respectfully submitted,

2

3                                                 _Avantika Shastri_
                                                  Avantika Shastri
4                                                 Zachary Nightingale
                                                  Marc Van Der Hout
5
                                                  Attorneys for Petitioner
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28