1
Zachary Nightingale (California Bar #184501)
Avantika Shastri (California Bar #233453)
2
Van Der Hout, Brigagliano & Nightingale, LLP
180 Sutter Street, Fifth Floor
3
San Francisco, California 94104
Telephone:  (415) 981-3000
4
Facsimile:  (415) 981-3003
Email: ndca@vblaw.com
5

Attorneys for Petitioner
6
Preston MAGIYA

7

8
UNITED STATES DISTRICT COURT FOR THE
9
NORTHERN DISTRICT OF CALIFORNIA SAN FRANCISCO
10

11
Preston Magiya

Case No. C 07-2945 CRB

12
        Petitioner,

**Petitioner's Memorandum of Points and Authorities in Opposition to Respondent's Motion for Summary Judgment**

13
        v.

14
Michael B. Mukasey

Hearing Date:     May 9, 2008
15
        Respondent.

Hearing Time:     10:00 a.m.

16

17

18

19

20

21

22

23

24

25

26

27

28

TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   STATEMENT OF FACTS ................................................................................... 3

III.  STATEMENT OF CASE ..................................................................................... 5

IV.   ARGUMENTS ..................................................................................................... 7

      A.    THIS COURT MAY RETAIN JURISDICTION OF THIS CASE. ...................... 7

            1.    Venue is proper in the Northern District of California. .................. 7

            2.    Even if this Court were to find venue is not proper in the
                  Central District of California, this Court may transfer
                  jurisdiction (and venue) to itself pursuant to 28 U.S.C. §
                  1361 or 28 U.S.C. § 1404. ........................................................... 9

      B.    THIS CASE PRESENTS GENUINE ISSUES OF MATERIAL
            FACT THAT WARRANT A DE NOVO HEARING. ..................................... 10

            1.    This Court should find that Respondent bears the burden of
                  proof in his case, and cannot justify summary judgment. ........... 12

                  a.    Under Woodby, Respondent bears the burden in
                        this case to show - by clear, convincing, and
                        unequivocal evidence - that Petitioner is not a
                        United States citizen ............................................. 12

                  b.    As shown by the Ninth Circuit Order in this case,
                        Respondent cannot show every essential element
                        in his claim ............................................................ 15

            2.    Even if this Court finds that Petitioner bears the burden, it
                  should still find that this case should proceed for a de novo
                  hearing. ...................................................................................... 18

                  a.    The Ninth Circuit has already found that this
                        case presents a genuine issue for trial, given that
                        it transferred the case pursuant to 8 U.S.C. §
                        1252(b)(5), which applies the same standard as
                        Rule 56. ................................................................. 18

                  b.    Should this Court choose to independently review
                        this matter, it should find that this case presents a
                        genuine issue for trial. ........................................... 18

                        (1)    Respondent fails to meet his initial burden of
                               production, and show that Petitioner will be
                               unable to demonstrate his citizenship at trial. ........ 18

(2)    Assuming this Court finds that Respondent meets his initial burden of production, Petitioner sets forth specific evidence of a genuine issue of fact regarding his citizenship, which warrants <u>de novo</u> review by this Court. ....................................................................20

V.      CONCLUSION ........................................................................................23

1

TABLE OF AUTHORITIES

2

Federal Cases

3

Agosto v. INS, 436 U.S. 748 (1978) ................................................................................ passim

4

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) ......................................... 10, 19, 20

5

Baeta v. Sonchik, 273 F.3d 1261 (9th Cir. 2001) ............................................................ passim

6

Batista v. Ashcroft, 270 F.3d 8 (1st Cir. 2001) ........................................................... 13

7

Beard v. Banks, 126 S.Ct. 2572, (2006) ........................................................................ 20

8

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) ..................................................... 2, 11, 15

9

Chau v. US DHS, 424 F.Supp.2d 1159 (D. Ariz. 2006) ............................................ 13

10

Corona-Palomera v. INS, 661 F.2d 814 (9th Cir. 1981) ............................................ 13

11

Cortez Byrd Chips, Inc. v. Bill Harbert Construction Company, 529 U.S. 193 (1960) ................... 7

12

Dornbusch v. Commissioner of Internal Revenue Svc., 860 F.2d 611 (5th Cir. 1988) .................. 9

13

Eastman Kodak Co. v. Image Technical Servs., Inc., 504 U.S. 451 (1992) ................................ 20

14

Go-Video, Inc. v. Akai Electric Company, Ltd., 885 F.2d 1406 (9th Cir. 1989) .......................... 8

15

High Tech Gays v. Defense Indus. Sec. Clearance Office, 895 F.2d 563 (9th Cir.1990) .............. 11

16

Hunt v. Cromartie, 526 U.S. 541 (1999) ....................................................................... 20

17

Leal Santos v. Gonzales, 495 F.Supp.2d 180 (D.Mass 2007) ........................................ 8

18

Leroy v. Great Western United Corp.,  443 U.S. 173 (1979) ........................................ 10

19

Murphy v. INS, 54 F.3d 605 (9th Cir. 1995) ............................................................. passim

20

Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc., 210 F.3d 1099 (9th Cir. 2000) ............... 11

21

Pure-Oil v. Suarez, 384 U.S. 202 (1966) .............................................................. 3, 7

22

Ramon-Sepulveda v. INS, 743 F.2d 1307 (9th Cir. 1984) ............................................ 1

23

Rodriguez-Roman v. INS, 98 F.3d 416 (9th Cir. 1996) .......................................... 3, 4, 9

24

Sanchez-Martinez v. INS, 714 F.2d 72 (9th Cir. 1983) ......................................... 13, 14, 15

25

Southern. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885 (9th Cir. 2003) ..................... 11, 15

26

Woodby v. INS, 385 U.S. 276 (1966) ..................................................................... passim

27

28

Federal Statutes

Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. 104-208, 110

    Stat. 3009 (Sept. 30, 1996), Tit. III, § 309(c) ........................................................................12

8 U.S.C. § 1105a (1976) ...............................................................................................................16

8 U.S.C. § 1105a(a)(4) (1976) ........................................................................................................2

8 U.S.C. § 1101a(a)(5)(B) (1976) ................................................................................................22

8 U.S.C. § 1229a ...........................................................................................................................12

8 U.S.C. § 1251(a)(2) (1988) ..........................................................................................................5

8 U.S.C. § 1251(a)(9) (1988) ..........................................................................................................5

8 U.S.C. § 1252(b)(5) ..............................................................................................................16, 24

8 U.S.C. § 1252(b)(5)(B) .....................................................................................................passim

8 U.S.C. § 1451(a) .........................................................................................................................14

8 U.S.C. § 1503(a) .........................................................................................................................14

28 U.S.C. § 1361 .........................................................................................................................9, 24

28 U.S.C. § 1391(e) ........................................................................................................................8

28 U.S.C. § 1404 ........................................................................................................................9, 24

28 U.S.C. § 1404(a) ......................................................................................................................10

28 U.S.C. § 2201 .......................................................................................................................9, 14

State Statutes

California Penal Code § 475(a) ......................................................................................................5

No: C 07-2945 CRB

1    I.    INTRODUCTION AND STATEMENT OF ISSUES

2          Petitioner, Mr. Preston Magiya ("Petitioner"), is a United States citizen who was born and

3    raised under unusual circumstances, and has been struggling to defend against the government

4    attempts to disprove his citizenship in removal proceedings for over 20 years.  In those

5    proceedings, he has consistently testified regarding his home-birth in Richmond, California, and

6    his isolated upbringing by his grandmother and his uncle in Los Angeles and the San Francisco

7    Bay Area.  He has also consistently and reasonably explained his efforts to obtain identity

8    documents and delayed birth certificates as he became older, and that he ultimately relied on a

9    foreign passport as identification when he could not obtain these documents from the California

10   state agencies without proof of his birth.  Also, in those proceedings, the former Immigration and

11   Nationality Service ("INS") repeatedly sought to disprove Petitioner's U.S. citizenship, but has

12   never been able to meet its burden to show that Petitioner is not a United States citizen by clear,

13   convincing, and unequivocal evidence.  Woodby v. INS, 385 U.S. 276, 281 (1966); Ramon-

14   Sepulveda v. INS, 743 F.2d 1307, 1308 n.2 (9th Cir. 1984); Murphy v. INS, 54 F.3d 605, 608

15   (9th Cir. 1995).  At most, the INS was able to show that Petitioner used a foreign passport for

16   identification, which Petitioner has never contested.

17         Notably, the Ninth Circuit in the course of the petition for review, reviewed virtually the

18   same evidence presented now before this Court, and found that this case presented a genuine

19   issue of material fact pursuant to 8 U.S.C. § 1252(b)(5)(B) that warranted transfer of this case to

20   the district court.  The Supreme Court has held that the legal standard of a "genuine issue of

21   material fact" for transferring cases pursuant to 8 U.S.C. § 1252(b)(5)(B) and for reviewing

22   motions for summary judgment under Federal Rule of Civil Procedure 56 are identical.  See

23   Agosto v. INS, 436 U.S. 748 (1978).  The Ninth Circuit in its order stated: "We find that a

24   genuine issue of material fact exists as to Magiya's nationality." Declaration of Ila Deiss in

25   Support of Motion for Summary Judgment ("Deiss Decl."), Exhibit ("Exh.") 1.  Given that the

26   Ninth Circuit transferred this case, this Court should find that Respondent's motion for summary

27   judgment is unwarranted.

28

1

This standard is met whether Respondent bears the burden of proof at trial to show that Petitioner is not a United States citizen by "clear, convincing and unequivocal" evidence, which Petitioner believes is the correct burden to apply in this case, or whether Petitioner bears the burden of proof to show that he is a United States citizen by a preponderance of the evidence, as Respondent alleges. See Woodby, 385 U.S. at 286.[1]

Under the former burden, Respondent has not shown that this case warrants summary judgment given that the Ninth Circuit did not find in his favor on the same evidence under the same standard in his petition for review, and instead transferred this case for further fact-finding under 8 U.S.C. § 1252(b)(5)(B). Notably, this Court may sua sponte grant summary judgment in Petitioner's favor on this basis. See Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986).

Likewise, under the latter burden, Respondent also cannot show that this case warrants summary judgment. Again, by transferring the case pursuant to 8 U.S.C. § 1252(b)(5)(B), the Ninth Circuit clearly indicated that it found that Petitioner should be given an opportunity to present his testimony and evidence of U.S. citizenship de novo. In addition, were the court to independently assess the evidence on this motion, Petitioner believes that Respondent does not meet his initial burden to show that Petitioner will be unable to prove his citizenship, and that Petitioner presents specific evidence showing material facts in dispute. Given that this Court cannot base its summary judgment decision on credibility finding absent live testimony, this Court should find that this case should be permitted to continue to trial. See Agosto, 436 U.S. at 761. Thus, regardless of the burden of proof in these proceedings, this case should be permitted to proceed for a de novo hearing.

In addition, Petitioner shows that this case does not warrant transfer to the Federal District

---

[1] The Ninth Circuit Order did not decide this issue when transferring the case. See Deiss Decl., Exh. 1. Before the Ninth Circuit, Respondent argued that the case should not be transferred because Petitioner had not shown a genuine issue of fact regarding his citizenship. Petitioner in turn argued that remand was unnecessary because the evidentiary record was sufficiently developed for the Court to evaluate whether the government had met its burden under former 8 U.S.C. § 1105a(a)(4) to show that Petitioner was not a citizen. Given that the Ninth Circuit found that an additional evidentiary hearing was necessary, despite both Respondent and Petitioner's arguments to the contrary, Petitioner requests that this Court allow the hearing to take place and retain the burden of proof on Respondent.

Court of the Central District of California, despite the apparently mistaken transfer of the Ninth

Circuit.  This Court may find that venue is proper in the Northern District of California based on

the general venue statutes, which supplement the specific provisions at 8 U.S.C. § 1252(b)(5)(B).

See e.g., Pure-Oil v. Suarez, 384 U.S. 202 (1966). Alternatively, this Court may retain venue over

this case in the interests of justice.  See Baeta v. Sonchik, 273 F.3d 1261 (9th Cir. 2001);

Rodriguez-Roman v. INS, 98 F.3d 416 (9th Cir. 1996).

## II.    STATEMENT OF FACTS

Petitioner was born at home in Richmond, California on August 28, 1963.  See

Declaration of Zachary Nightingale in Support of Opposition to Motion for Summary Judgment

("Nightingale Decl."), Exh. A at ¶ 2. His birth was not registered; his parents abandoned him

shortly after his birth.  Id.  He was raised by his paternal grandmother, Bobo Magiya, whom he

believed was his mother until he learned the truth from her at age 13.  Id.  During his childhood,

his grandmother did not believe in formal education and chose to educate him at home based on

the bible.  Id. at ¶ 3.

In his early teenage years, Petitioner was transferred to his uncle's care because his

grandmother was ill.  Id. at ¶ 4.  He lived with his uncle, Ira Perry, in Los Angeles and Oakland,

California. Id.  He did not continue his schooling while living with his uncle. Id.  Instead, he took

odd jobs to support himself. Id.

In approximately 1981, he moved away because of his uncle's use of alcohol and tobacco.

Id. at ¶ 5.  His grandmother died during the period of approximately 1982 to 1984, and Petitioner

lost contact with his uncle. Id.

After leaving his uncle, Petitioner decided to pursue further education in order to improve

his employment opportunities. Id. at ¶ 6.  He desired to attend the College of Alameda, in

Alameda, California, to obtain an accounting degree. Id. He needed identification to register for

school, which he never had up to that point. Id.  He contacted the city of Richmond, California,

where he was born, but they had no record of his birth as it never was registered.  Id. at ¶ 7.  He

also contacted the State of California to no avail.  Id.  Since he did not have any way to prove his

3

Pet.'s Opp. to Resp. Mot. for Summary Judgment                                          No: C 07-2945 CRB

identity, Petitioner obtained identification documents on the street, including a British passport in the name of Preston Hudson.  Id. at ¶ 8.  Petitioner did not pay much attention to the fact that the passport was British because at the time he was only interested in obtaining an identity document which would enable him to register for school. Id.

Petitioner then obtained, with the use of the passport, his own driver's license and social security card.  Id. at ¶ 9.  Although he wanted to obtain identity documents in his own true name, Preston Magiya, the government agencies were unwilling to allow for a name different than what appeared in the passport. Id.  Thus, on the social security card application, he used both names, in order to have his real name present, and in order to satisfy the requirements of the agencies.  Id. He used the name Preston Ochuko Hudson-Amagiya and Preston Ogheneochuko Amagiya.  Id. Petitioner obtained a driver's license in the name Preston Amagiya.  Id. After he obtained the identity documents – the social security card and the driver's license - he returned the passport to the individual who gave it to him, as that person requested it back and Petitioner had no further use for it. Id. at ¶ 10. He never used the passport for travel or any other purpose than to obtain identity documents. Id.  He was able to register for and attend school, and subsequently obtained a bachelor of science from the California State University in Los Angeles, a MBA from University of Phoenix. Id. at ¶ 8.  He is currently a finance manager for a company in Los Angeles. Id. at ¶ 1.

On May 23, 1986, Petitioner applied for a Delayed Registration of Birth with the California Department of Health and Human Services.  Id. at ¶ 11; see also Nightingale Decl., Exh. C. This application included affidavits of his uncle, Ira Perry, and cousin, Laura Kenney, as witnesses.  Nightingale Decl., Exh. A at ¶ 11.  This Certificate was issued on March 21, 1986. Id. He subsequently obtained a second Delayed Registration of Birth in 1991, based on knowledge of his birth by another uncle.  Id.; see also Nightingale Decl., Exh. D.

On February 8, 1988, Petitioner came to the attention of the INS, which was conducting an investigation of a series of financial crimes. Nightingale Decl., Exh. A at ¶ 12.  At the initiation of the investigation, INS officer Michael Smirnoff interviewed Petitioner on February 8, 1988.  Id.  Petitioner informed him that he was born in Richmond, California. Id.  He was put in

proceedings thereafter. Id.

As part of its investigation, the INS contacted the California Department of Vital Statistics, which informed INS there were no records of Petitioner's birth, although a delayed certificate of birth had already been issued on June 23, 1986. Nightingale Decl., Exh. F-H. The INS provided to the Department a declaration of a Mr. Berry, and possibly a bank record indicating Petitioner's birth in a state other than California. Nightingale Decl., Exh. G; see also Nightingale Decl., Exh. H at 42, 53-54. Based on the information received from INS, the Department sealed the first delayed certificate, and subsequently the second. Id. at 42, 54, 66-69. The Department never conducted its own investigation but simply accepted and relied on the information received from the INS. Id. at 41, 56-57, 59-64. It also appears that they never contacted Petitioner in regards to this matter before sealing the registration. Id. at 46.

The INS was also unable to verify, through contacts with the British government, any evidence of Petitioner's identity as a citizen of the United Kingdom or any evidence of foreign birth. Nightingale Decl., Exh. E.

III.    STATEMENT OF CASE

On April 22, 1988, the INS issued an Order to Show Cause ("OSC"). Deiss Decl., Exh. 2. The OSC charged Petitioner with being a citizen of the United Kingdom, entering the United States on January 14, 1985 as a visitor, and being convicted on March 16, 1988 of the offense of possession of a bad check or money order in violation of California Penal Code § 475(a). Id. It thus charged him as being deportable under 8 U.S.C. § 1251(a)(2) (1988) (overstaying nonimmigrant visa) and § 1251(a)(9) (1988) (violating conditions of nonimmigrant status). Id.

Petitioner first appeared on May 22, 1988 before the Immigration Court in San Francisco California. Petitioner asserted his United States citizenship and presented a delayed birth certificate, indicating birth in Richmond, California. Deiss Decl., Exh. 6. The Immigration Judge ("IJ") terminated the deportation proceedings. Deiss Decl., Exh. 4. On May 22, 1988, the Service appealed the decision and, on August 3, 1992, the BIA remanded the case to the IJ for a full hearing on the issue of alienage. Deiss Decl., Exh. 6.

5

1    Petitioner appeared again before the Immigration Court (then before IJ Coupe) on April

2    29, 1998.  Deiss Decl., Exh. 10.  Petitioner denied all of the charges in the OSC.  Deiss Decl.,

3    Exh. 10.  The INS presented 16 items, allegedly related to Petitioner's alienage and meant to

4    show he had entered the United States on January 14, 1985 as a visitor from the United Kingdom.

5    Id.  It submitted various documents into the records, and in support of the admission of the

6    documents, the INS called three witnesses: INS Investigator Dennis Dilley; Section chief of the

7    criminal section for the investigations branch of INS in San Francisco Michael Smirnoff; and

8    Petitioner.  Id.

9    Of these documents, only one (Record of Deportable Alien, see Deiss Decl., Exh. 3)

10   allegedly provided direct evidence of Petitioner's alienage.  The other documents were

11   circumstantial evidence directed at impeaching Petitioner's credibility. Id. Petitioner objected to

12   the admission of these documents, both in court and in a written submission filed on June 23,

13   1998.  Id.

14   During the hearing, Petitioner also submitted into evidence four additional documents:

15   Memorandum from DIINV/SFR to Interpol/INS Liaison dated April 22, 1988 (Nightingale Decl.,

16   Exh. D); Letter from INS Assistant District Director for Investigations to California Department

17   of Social Services dated April 21, 1988 (Nightingale Decl., Exh. E); Memorandum to file dated

18   April 29, 1988 (Nightingale Decl., Exh. F); and Letter from INS Assistant District Director for

19   Investigations to Regional Inspector General for Investigations, Department of Health and

20   Human Services dated April 4, 1988 (Nightingale Decl., Exh. G).  Id. These documents were

21   submitted to show the government had attempted, unsuccessfully, to compile enough evidence

22   against Petitioner for criminal charges of making a false claim of United States citizenship.  On,

23   July 28, 1998, the IJ found inadmissible the declaration of Mr. Berry, and admitted the rest of the

24   Service's exhibits and gave most of them full evidentiary weight. Id.

25   The IJ found that Petitioner's deportability had been established by "clear, convincing and

26   unequivocal evidence." Id.  The IJ came to this conclusion based on the finding that Petitioner's

27   birth in Richmond, California is not substantiated by "any or known [sic] record." Id.  The Court

28   also stated that it found Petitioner "has not been credible." Id.  The Court then ordered Petitioner

6

1  deported. Id.

2      Petitioner appealed to the Board of Immigration Appeals ("BIA" or "Board"), which

3  remanded the case back to the Immigration Court for the issuance of a separate decision. Deiss

4  Decl., Exh. 9.  On July 15, 2003, another IJ issued a decision based on the transcript of the

5  proceedings and ordered Petitioner's deportation.  Deiss Decl., Exh. 10.

6      Petitioner again appealed to the BIA on August 11, 2003.  On December 16, 2004, the

7  BIA adopted and affirmed the IJ's order. Deiss Decl., Exh. 13.   It upheld the IJ's adverse

8  credibility finding.  Id. It proceeded to specifically affirm the IJ's admission of various

9  documents to which Petitioner had objected. Id.  It also concluded that the government had met

10 its burden of proof with respect to establishing Petitioner's deportability. Id.

11     On March 16, 2007, the Ninth Circuit heard oral arguments on this case and took the case

12 and the briefings under submission.  Nightingale Decl., Exh. A at ¶ 14.  On March 29, 2007, it

13 transferred the case to this Court for a de novo hearing on the issue of Petitioner's nationality.

14 Deiss Decl., Exh. 1.

15

16 IV.   ARGUMENTS

17     A.   THIS COURT MAY RETAIN JURISDICTION OF THIS CASE.

18         1.   Venue is proper in the Northern District of California.

19     When a cause of action arises within a particular area of law where Congress has enacted

20 special venue statutes, case law makes clear that the ability of a plaintiff to choose between

21 general venue provisions and more specific venue provisions depends on whether Congress

22 intended to make the more specific provision the exclusive source of venue.  In Pure-Oil v.

23 Suarez, 384 U.S. 202. 205-206 (1966), the Supreme Court considered two venue statutes, the

24 general venue provisions and the specific venue provisions for Jones Act claims which made

25 venue proper only where the defendant resided or had his principal place of business.  The Court

26 held that venue for a Jones Act claim was proper under the general venue statute despite the fact

27 that the Jones Act had a specific venue statute making venue proper only where the defendant

28 resided or had his principal place of business.  See also Cortez Byrd Chips, Inc. v. Bill Harbert

Construction Company, 529 U.S. 193, 194 (1960) (holding that the Federal Arbitration Act ("FAA") venue provisions, as they related to the general venue provisions "were meant to expand, not limit, venue choice."); Go-Video, Inc. v. Akai Electric Company, Ltd., 885 F.2d 1406, 1409 (9th Cir. 1989) (holding that the specific provisions of the Clayton Act supplemented, as opposed to preempted, the general venue statutes).

In the absence of any intent on the part of Congress to make the more specific venue provisions the exclusive source of venue, the "courts have interpreted special venue provisions to supplement rather than pre-empt, general venue statutes." Go-Video, Inc. v. Akai Electric Company, Ltd., 885 F.2d at 1409. In the instant case, there is no evidence suggesting that 8 U.S.C. § 1252(b)(5)(B) was intended to pre-empt the general venue provisions, specifically 28 U.S.C. § 1391(e).

Here, the specific venue provision at issue, 8 U.S.C. § 1252(b)(5)(B) indicates that where a genuine issue of material about the petitioner's nationality is presented, the court of appeals shall transfer the proceeding to the district court in which the petitioner resides. This provision does not conflict with 28 U.S.C. § 1391(e), which provides for venue in cases where the defendant is an officer or employee of the United States or any agency thereof. In such cases, § 1391(e) provides for venue either in a district where a defendant in the action resides, or in a district where a substantial part of the events or omissions giving rise to the claim occurred, or where the plaintiff resides if there is no real property involved in the action. Thus, 8 U.S.C. § 1252(b)(5)(B) and 28 U.S.C. § 1391(e) both contain the option of where plaintiff resides. However, because the specific venue provision is not to be read as a limiting provision, and venue is proper to the general venue provision because a defendant in the action resides in the Northern District and because a substantial part of the events giving rise to the instant claim, namely all of Petitioner's removal proceedings, as well as a substantial part of Petitioner's life, including his birth, which is at issue here, have occurred in the Northern District of California. This reading is consistent with both Supreme Court and Ninth Circuit precedent that are binding on this Court. See also Leal Santos v. Gonzales, 495 F.Supp.2d 180, 182-83 (D.Mass 2007) (finding venue proper in the District of Massachusetts, despite the fact that petitioner had been deported, and finding that

8

Pet.'s Opp. to Resp. Mot. for Summary Judgment                                   No: C 07-2945 CRB

1    petitioner's case could have been transferred to the District of Massachusetts even had the

2    petitioner resided in the Middle District of Pennsylvania under the general venue transfer

3    statute.).

4                    2.    Even if this Court were to find venue is not proper in the Central District of
                          California, this Court may transfer jurisdiction (and venue) to itself
5                          pursuant to 28 U.S.C. § 1361 or 28 U.S.C. § 1404.

6        In the alternative, if this Court were to find that it lacks jurisdiction, it possesses the authority

7    to cure the want of jurisdiction by transferring jurisdiction to itself pursuant to 28 U.S.C. § 1361.

8    See Baeta v. Sonchik, 273 F.3d 1261 (9th Cir. 2001) (Court of appeals possessed authority

9    pursuant to federal transfer statute to transfer petitioner's proceedings to itself); Rodriguez-

10   Roman v. INS, 98 F.3d 416 (9th Cir. 1996) (same).  In Baeta, the Ninth Circuit explained that in

11   immigration cases, the transfer statute permits a court to transfer a case to itself where 1) it would

12   have been able to exercise jurisdiction on the date that the case was filed before the initial court;

13   2) the first court lacked jurisdiction over the case; and 3) the transfer is in the interest of justice.

14   Baeta v. Sonchik, 273 F.3d at 1263 (citing Castro-Cortez v. INS, 239 F.3d 1037 (9th Cir. 2001)).

15           As related to the first condition, the Ninth Circuit transferred Petitioner's case to the

16   Northern District.  This Court would have been able to exercise jurisdiction had Petitioner

17   originally brought his claim before this Court in the form of a declaratory judgment under 28

18   U.S.C. § 2201 (Creation of Remedy).

19       As related to the second condition, if this Court has determined that the specific venue

20   provision at 8 U.S.C. § 1252(b)(5)(B) supplants, as opposed to supplements, the general venue

21   provisions, then it has necessarily determined that it does lacks jurisdiction and thus this second

22   condition is satisfied.  See Rodriguez-Roman v. INS, 98 F.3d at 424 ("[f]or purposes of the

23   transfer statute, a court lacks jurisdiction if venue does not lie."), citing Dornbusch v.

24   Commissioner of Internal Revenue Svc., 860 F.2d 611, 615 (5th Cir. 1988) (holding "that where

25   a court has jurisdiction but lacks venue, it may transfer a case to a court of appeals of proper

26   venue under the federal transfer statute or its inherent authority.")

27           As related to the third and final condition, it is abundantly clear that if this Court finds that

28   venue is improper, it should nevertheless transfer jurisdiction to itself because such a transfer

serves the interest of justice. As a preliminary matter, it should be noted that Petitioner's case was transferred from the Ninth Circuit to the Northern District of California <u>by</u> the Ninth Circuit itself. As such, any error, if this Court finds there one, lies with the Court of Appeals. Additionally, Petitioner's lawyers who have been representing Petitioner since his case began in 1988, are located in San Francisco; Respondent's lawyers who have also been litigating the case for ten years are located in San Francisco; all of Petitioner's immigration hearings occurred in San Francisco; and all of the discovery was completed in San Francisco. As such, venue being transferred to the instant court, if necessary, is in the interest of justice.

Additionally, a district court may transfer any civil action to any other district or division where it might have been brought "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). As such, had the Ninth Circuit transferred Petitioner's action to the Central District of California, the case could have been transferred to the Northern District of California under the venue transfer statute because as stated above, it could have been brought in the Northern District in the first instance and because it is in the interest of justice for the case to be heard in the Northern District. Thus it is appropriate for venue to remain with this Court.

Lastly, venue may be waived by both Petitioner and Respondents. <u>See</u> <u>Leroy v. Great Western United Corp.</u>, 443 U.S. 173, 180 (1979) ("[N]either personal jurisdiction nor venue is fundamentally preliminary in the sense that subject-matter jurisdiction is, for both are personal privileges of the defendant, rather than absolute strictures on the court, and both may be waived by the parties…" (internal citations omitted)). In the instant case, the Ninth Circuit transferred the proceeding to this Court. Both parties submitted case-management status conference reports, engaged in extensive discovery, and have become intimately familiar with the facts of the case. Both parties have, in effect, consented to venue before this Court. After 20 years of litigation, further unnecessary delay caused by the venue issue should be avoided if at all possible.

        B.      THIS CASE PRESENTS GENUINE ISSUES OF MATERIAL FACT THAT WARRANT A <u>DE NOVO</u> HEARING.

This Court's role under Rule 56 is narrowly limited to assessing the threshold question of whether a genuine issue exists as to material facts requiring a trial. <u>See</u> <u>Anderson v. Liberty</u>

Lobby, Inc., 477 U.S. 242, 249 (1986).  A court may grant summary judgment only if the pleadings and supporting documents, viewed in the light most favorable to the opposing party, "show that there is not genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  If the moving party meets its burden, the opposing party must, "by affidavits or as otherwise provided" in Rule 56, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).  Summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322.

A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A moving party with the burden of persuasion at trial must establish "beyond controversy every essential element of its" claim. Southern. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 888 (9th Cir. 2003).  In such a case, an opposing party can defeat summary judgment by demonstrating the evidence, taken as a whole, could lead a rational trier of fact to find in its favor. Id.

Even a moving party without the ultimate burden of persuasion has the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment.  Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc., 210 F.3d 1099, 1102 (9th Cir. 2000).  In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. See High Tech Gays v. Defense Indus. Sec. Clearance Office, 895 F.2d 563, 574 (9th Cir.1990).  In order to carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact. See id.

11

Pet.'s Opp. to Resp. Mot. for Summary Judgment                                          No: C 07-2945 CRB

As shown in Respondent's motion for summary judgment and this opposition, the parties dispute the burden of proof in this case. However, regardless of who bears the burden, this Court should find that the case should proceed to a <u>de novo</u> hearing based on the fact that the Ninth Circuit already found a "genuine issue of material fact" based on the same evidence and transferred this case pursuant to 8 U.S.C. § 1252(b)(5)(B). Alternatively, this Court may come to the same conclusion following its own independent review of the evidence submitted in support of the motion for summary judgment and this opposition.

       1.    <u>This Court should find that Respondent bears the burden of proof in his case, and cannot justify summary judgment</u>.

       a.    **Under <u>Woodby</u>, Respondent bears the burden in this case to show - by clear, convincing, and unequivocal evidence - that Petitioner is not a United States citizen**.

In this case, the burden of proof must remain on Respondent just as it was in the deportation proceedings. Given that this case was originally a deportation case that was transferred from the Court of Appeals pursuant to 8 U.S.C. § 1252(b)(5)(B), and the government has never met its initial burden of showing alienage, this Court should find that the burden remains on Respondent to show Petitioner's citizenship in these proceedings by clear, convincing, and unequivocal evidence. <u>See</u> <u>Woodby v. INS</u>, 385 U.S. 276, 281 (1966). This issue appears to be one of first impression in this Circuit.

Unlike removal proceedings, deportation proceedings (i.e. those proceedings initiated before April 1, 1997) continue to be governed by the Supreme Court's decision in <u>Woodby</u>, holding that the government must show deportability (including alienage) by clear, convincing and unequivocal evidence. 385 U.S. at 286. <u>See also</u> Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") Pub. L. 104-208, 110 Stat. 3009 (Sept. 30, 1996), Tit. III, § 309(c) (stating that the provisions of IIRIRA, which implemented a new removal statute at 8 U.S.C. § 1229a, did <u>not</u> apply to aliens already in proceedings prior to April 1, 1997, IIRIRA's effective date). Therefore, this is the burden of proof that continues to apply to Petitioner's deportation proceedings (and appeals thereof). Contrary to Respondent's allegations in his motion for summary judgment, the burden now is not on Petitioner. This is because Respondent

has never shown that Petitioner is a non-citizen, which is the threshold jurisdictional issue for both the removal proceedings and this Court's jurisdiction over him in these <u>transferred</u> proceedings. <u>See Murphy v. INS</u>, 54 F.3d 605, 608-09 (9th Cir. 1995) (holding that alienage is a jurisdictional fact). The fact that a particular case is transferred under 8 U.S.C. § 1252(b)(5)(B) does not present any reason that the burden of proof should be shifted to the individual petitioner.

Notably, very few precedent decisions since the <u>Woodby</u> decision have even addressed the burden of proof issue in the context of a transfer under § 1252(b)(5)(B), and those that have were only in a context where the parties did not dispute the existence of a foreign birth or the government made a prima facie showing of alienage. <u>See e.g.</u>, <u>Baeta v. Sonchik</u>, 272 F.3d 1261, 1265 (9th Cir. 2001) (placing burden on petitioner to show citizenship for purposes of transfer under § 1252(b)(5)(B) when petitioner was born in Poland but made claim to derivative citizenship); <u>Sanchez-Martinez v. INS</u>, 714 F.2d 72, 75 (9th Cir. 1983) (placing burden on petitioner when government had Mexican birth certificate for him); <u>Chau v. US DHS</u>, 424 F.Supp.2d 1159, 1163 (D. Ariz. 2006) (evaluating derivative claim to citizenship of petitioner born in Vietnam); <u>Batista v. Ashcroft</u>, 270 F.3d 8, 11-12 (1st Cir. 2001) (placing burden on petitioner in case of derived citizenship).[2] Thus, when the government <u>can</u> meet its burden to demonstrate foreign birth, then the burden in the deportation proceedings shifts to the individual regarding his citizenship/alienage. <u>See</u> <u>Corona-Palomera v. INS</u>, 661 F.2d 814, 818 (9th Cir. 1981). Therefore, in such cases it would not violate the principles of <u>Woodby</u> to have the burden be on the Petitioner when the case is transferred to the district court since that preserves the same burden placement as in the deportation hearing itself.

However, when there is <u>no prima facie</u> evidence of foreign birth (or when that issue is in dispute), then the burden remains on the government in the deportation proceeding to show a petitioner's alienage, and it would thus violate the principles of <u>Woodby</u> to place that burden on the individual simply because of the transfer which itself is triggered by the very same dispute of

---

[2] In <u>Agosto</u>, there was evidence supporting both sides and the Court found that a <u>de novo</u> hearing was appropriate without specifying (and without regard to) who had the burden. 436 U.S. at 757.

fact regarding alienage.  In such circumstances, it is therefore appropriate that the burden of proof match those in deportation proceedings (which is also that of denaturalization proceedings). The Supreme Court in Woodby noted the similarity between the burdens on the government in deportation and denaturalization proceedings, and reasoned that the heightened burden of proof was appropriate because both proceedings placed enormous hardship on the alleged non-citizen:

> This Court has not closed its eyes to the drastic deprivations that may follow when a resident of this country is compelled by our Government to forsake all the bonds formed here and go to a foreign land where he often has no contemporary identification. In words apposite to the question before us, we have spoken of 'the solidity of proof that is required for a judgment entailing the consequences of deportation, particularly in the case of an old man who has lived in this country for forty years …In denaturalization cases the Court has required the Government to establish its allegations by clear, unequivocal, and convincing evidence. … No less a burden of proof is appropriate in deportation proceedings. The immediate hardship of deportation is often greater than that inflicted by denaturalization, which does not, immediately at least, result in expulsion from our shores. …."

385 U.S. at 285. Were this not the case, the precise cases which involve a dispute of fact as to alienage are the ones that will ultimately result on appeal with a shift of the burden of proof from the government to the individual, and thereby undermine the exact holding of Woodby. [3]

The only Ninth Circuit case even to address this issue since Woodby specifically avoided deciding the burden issue. In Sanchez-Martinez, 714 F.2d 72 (9th Cir. 1983), the Ninth Circuit found that the district court had correctly determined that the evidence did not support U.S. citizenship by birth even if the burden was placed on the government.  714 F.2d at 75.  The Court

---

[3] The language of 8 U.S.C. § 1252(b)(5)(b) does not foreclose this argument.  See 8 U.S.C. § 1252(b)(5)(B) (stating that the new hearing would be transferred "as if an action had been brought in the district court under section 2201 of title 28, United States Code."). Section 1252(b)(5)(B) does not state how the burdens are to be applied on transfer, and therefore the burden could be placed on Respondent. The section's reference to 28 U.S.C. § 2201 also does not answer this question.  Although § 1252(b)(5)(B) cites to 28 U.S.C. § 2201, section 2201 does not authorize a declaration of citizenship.  Section 2201 is a general declaratory action statute. See 28 U.S.C. § 2201.  The provision under the Nationality and Immigration Act that permits affirmative declarations of citizenship is at 8 U.S.C. § 1503(a).  See 8 U.S.C. § 1503(a) (referencing that suit for declaration of citizenship may be brought under 28 U.S.C. § 2201). Therefore, it is not clear that Congress intended that all transferred actions necessarily proceed pursuant to 8 U.S.C. § 1503(a), rather than actions under 8 U.S.C. § 1451(a), which is a separate provision authorizing the government to bring denaturalization suits.  See 8 U.S.C. § 1451(a).  In effect, however, the government in a denaturalization proceeding under 8 U.S.C. § 1451(a) is in the same posture, i.e. requesting a declaratory judgment from the court, as a petitioner in a proceeding under 8 U.S.C. § 1503(a).  Here, by putting the burden on Respondent, the Court could comply with both Woodby and the intent of the statute.

14

1   did note that the pre-Woodby rule, based on case law developed to that point in time, was that the

2   burden would have been on the individual.  Id. at 74 n.1.  However, the Court noted that Woodby

3   created an important change in the applicable law regarding burden of proof, and specifically

4   avoided deciding how that changed the burden in the district court hearing (whether as an initial

5   filing or a transferred de novo hearing). Id. ("We do not decide whether Woodby alters our rule

6   that a citizen seeking a declaration of citizenship is required to make an initial showing of

7   citizenship by a preponderance of the evidence.").

8       Thus, given the Supreme Court's directives in Woodby (which still control Petitioner's

9   deportation case), this Court should find in this case that the burden remains on Respondent in

10  these proceedings to show that Petitioner is not a citizen by clear, convincing and unequivocal

11  evidence, and that Respondent's motion for summary judgment is therefore based on an

12  erroneous understanding of the law.  See Woodby,   385 U.S. at 284 ("We conclude, therefore,

13  that Congress has not addressed itself to the question of what degree of proof is required in

14  deportation proceedings. It is the kind of question which has traditionally been left to the

15  judiciary to resolve, and its resolution is necessary in the interest of the evenhanded

16  administration of the Immigration and Nationality Act.").[4]

17

18          b.    **As shown by the Ninth Circuit Order in this case, Respondent
                  cannot show every essential element in his claim**.

19      A moving party with the burden of persuasion at trial must prove every element of his

20  case upon a motion for summary judgment. Southern. Cal. Gas Co., 336 F.3d at 888.  However,

21  in this case,  the Ninth Circuit has already found that Respondent's evidence is insufficient to

22  meet his burden given that the Ninth Circuit reviewed essentially the same evidence presented to

23  this Court, and found a "genuine issue of material fact" existed so as to warrant a transfer under 8

24  U.S.C. § 1252(b)(5)(B).   By transferring this case pursuant to 8 U.S.C. § 1252(b)(5)(B), the

25  _____

26      [4] If the Court agrees that the burden of proof is on Respondent, this Court may sua sponte
    grant summary judgment on this issue in Petitioner's favor.  See Celotex Corp., 477 U.S. at 326.
27  The Ninth Circuit assessed virtually the same evidence before the Court today.  By transferring
    the case rather than deciding it, the Ninth Circuit must have found that Respondent's evidence
28  was insufficient to show by clear, convincing and unequivocal evidence that Petitioner is not a
    citizen of the United States.

1    Ninth Circuit has already indicated that Respondent cannot meet his burden to show Petitioner is

2    of foreign alienage and that this case warrants a de novo hearing.

3            In Agosto v. INS, 436 U.S. 748 (1978), the Supreme Court established that the standard

4    for transferring a case to the district court pursuant to 8 U.S.C. § 1105a (1976), the former statute

5    to 8 U.S.C. § 1252(b)(5), was the same as the standard for summary judgments under Federal

6    Rule of Civil Procedure 56.  See 436 U.S. at 752-757.  In arriving at that conclusion, the Supreme

7    Court examined the virtually identical language in the two statutory provisions and reasoned that

8    "[w]e may reasonably assume that, in using the language from Rule 56 as the standard for

9    granting de novo district court hearings on citizenship claims, Congress intended the language to

10   be interpreted similarly to that in Rule 56." Id. at 754.  The Supreme Court further examined the

11   legislative history of the transfer provision and found that it upheld this conclusion.  Id. at 755.

12   Thus, the Supreme Court concluded that

13           [s]ince summary judgment principles are controlling here, it follows that a court
             of appeals cannot refuse to allow a de novo review of a citizenship claim if the
14           evidence presented in support of the claim would be sufficient to entitle the
             litigant to trail were such evidence presented in opposition to a motion for
15           summary judgment.

16

17   Id. at 757.  It noted that, "[p]articularly where the evidence consists of the testimony of live

18   witnesses concerning material factual issues, it will seldom, if ever be appropriate to deny a de

19   novo hearing, since "it is only when the witnesses are present and subject to cross-examination

20   that their credibility and the weight to be given their testimony can be appraised." Id. (citations

21   and quotations omitted).  This analysis has never been revised.  It has further been adopted in the

22   Ninth Circuit, whose case law governs this case.  See e.g., Baeta v. Sonchik, 273 F.3d 1261, 1265

23   (9th Cir. 2001) (stating that, to justify transfer to the district court under 8 U.S.C. §

24   1252(b)(5)(B), the petitioner "must satisfy traditional summary judgment principles").

25           The Ninth Circuit's order to transfer this case should therefore be found to be

26   determinative of this motion for summary judgment.  In this case, Respondent and Petitioner

27   present the same, or virtually the same, evidence to this Court that the Ninth Circuit considered.

28   In particular, Respondent presents the documentary evidence contained in the administrative

record before the Ninth Circuit, including Petitioner's Order to Show Cause, Record of Deportable Alien, and prior decisions of the Immigration Judge, and BIA.  See Deiss Decl., Exh. 3-6, 8-13. The only new documents presented by Respondent are a copy of Petitioner's initial disclosures, and a declaration by Debbie Balsley, Chief of the Registration Section of the California Office of Vital Records ("OVR").  Id. at Exh. 7, 14.  However, this declaration contains effectively the same content as testimony produced during the Immigration Court proceedings by INS agents, who also stated that the registrations of birth had been sealed based on the unverified information provided by INS, without any independent investigation by the OVR or by any contact with Petitioner. Compare Deiss Decl., Exh. 10 to Deiss Decl., Exh. 5 at ¶¶ 13, 17.  See also Nightingale Decl., Exh. H at ¶ 41, 56-57, 59-64.  This evidence is therefore essentially the same as the evidence presented to the Ninth Circuit.

In turn, Petitioner presents a new declaration, which provides essentially the same testimony he has presented for the past 20 years, and two delayed birth certificates, which were previously presented to the Immigration Court, the BIA, and the Ninth Circuit. See Nightingale Decl., Exh. A-C. Although the delayed birth certificates were sealed, Petitioner's position is, as it has been throughout these proceedings, that they were improperly sealed by the California Office of Vital Records ("OVR") on the basis of unsubstantiated evidence from the INS.  This evidence, or its substance, was presented to the Ninth Circuit.

Thus, in transferring the case, the Ninth Circuit effectively reviewed the same evidence as presented to this Court.  Assuming it properly placed the burden of proof on Respondent, as required under Woodby, it must have found that Respondent's evidence was insufficient to show that Petitioner was not a United States citizen by clear, convincing, and unequivocal evidence.  If the Court had not made such a finding, it would have resolved the Ninth Circuit case in the government's favor and found that there was no genuine issue of fact under 8 U.S.C. § 1252(b)(5)(B).  This Court too should therefore find that the Ninth Circuit has already reviewed this issue and found that the case should proceed to trial pursuant to Rule 56 for a de novo hearing on the issue of Petitioner's citizenship.

/

17

/

/

      2.    <u>Even if this Court finds that Petitioner bears the burden, it should still find that this case should proceed for a de novo hearing.</u>

          a.    **The Ninth Circuit has already found that this case presents a genuine issue for trial, given that it transferred the case pursuant to 8 U.S.C. § 1252(b)(5)(B), which applies the same standard as Rule 56**.

Even if this Court finds that the burden is on Petitioner, it should find that the Ninth Circuit's Order requires it to grant a de novo hearing. As already shown in Section IV.B.1.b. of this brief, Petitioner and Respondent present virtually the same evidence as presented to the Ninth Circuit, and the Ninth Circuit concluded that a <u>de novo</u> hearing was required. In coming to that conclusion under 8 U.S.C. § 1252(b)(5)(B), if the Ninth Circuit had put the burden of proof on Petitioner, then the Ninth Circuit must have found that Petitioner presented a "genuine issue of material fact," despite Respondent's evidence that he was not a citizen. In these proceedings with the same evidence, this Court should find that the Ninth Circuit's decision determines this motion under Fed. R. Civ. Proc. 56 and that Respondent cannot show that summary judgment is warranted.

          b.    **Should this Court choose to independently review this matter, it should find that this case presents a genuine issue for trial.**

However, should this Court choose to independently review this issue, it should find that Respondent fails to show that summary judgment is warranted. First, Respondent's evidence fails to show that Petitioner has the burden or will be unable to demonstrate his citizenship at trial. Second, Petitioner sets forward evidence that specifically shows there is a genuine issue of material fact regarding his citizenship, which requires a <u>de novo</u> hearing by this Court.

              (1)    Respondent fails to meet his initial burden of production, and show that Petitioner will be unable to demonstrate his citizenship at trial.

Respondent fails to sufficiently show that Petitioner has the burden of proof or would be unable to demonstrate his birth in the United States at trial. In support of summary judgment, Respondent asserts that Petitioner will be unable to meet his burden at trial because: his

1    testimony has been found incredible by the Immigration Court and the Board, he has not

2    identified any other witnesses on his own behalf, and the delayed birth certificates submitted by

3    Petitioner in his prior proceedings have been sealed.  See Respondent's Memorandum of Points

4    and Authorities in Support of Motion for Summary Judgment, at 10-11.  Respondent also

5    suggests that it has evidence showing that Petitioner came to the United States in 1985 on a

6    United Kingdom passport. Id. at 9.  However, this evidence is insufficient to meet Respondent's

7    initial burden.

8         First, the credibility findings in the prior removal proceedings are irrelevant to Petitioner's

9    burden in this case.  The purpose of this trial is to hold a de novo hearing on the issue of

10   Petitioner's citizenship.  The district court therefore cannot rely on past credibility findings (or

11   even its own credibility assessment of the evidence at this point) to support a motion for summary

12   judgment.  See Agosto v. INS, 436 U.S. at 756 (1978) ("[A] district court generally cannot grant

13   summary judgment based on its assessment of the credibility of the evidence presented," and

14   finding that a de novo hearing was warranted to review the petitioner's testimony, even though it

15   had been found incredible by an IJ and the BIA); Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

16   249 (1986) ("[A]t the summary judgment stage the judge's function is not himself to weigh the

17   evidence and determine the truth of the matter but to determine whether there is a genuine issue

18   for trial").  In such a proceeding, Petitioner is entitled to present his own testimony, which may

19   be found sufficient alone to support his claim to citizenship.

20        Second, Respondent's evidence, which purportedly shows the invalidity of the delayed

21   birth certificates and purports that Petitioner arrived from the United Kingdom in 1985, fails to

22   foreclose the issue of whether or not he is United States citizen.  At most, Respondent's

23   submission of the sealed birth certificates and Ms. Balsley's declaration shows that the

24   certificates were sealed, but does not in fact provide support for the legitimacy of the evidence or

25   reasons by which they were issued.   The extent of the record shows that the birth certificates

26   were sealed based on information acquired from the INS.  See Deiss Decl., Exh. 5 at ¶¶ 13, 17.

27   Ms. Balsley's declaration does not prove that the information of the INS itself was conclusive as

28   to Petitioner's citizenship or that the certificates were properly sealed based on that information.

19

Pet.'s Opp. to Resp. Mot. for Summary Judgment                                    No: C 07-2945 CRB

1    Likewise, at most, Respondent's evidence shows that someone traveled on the passport from the

2    United Kingdom to the United States in 1985. It does not show that this person was Petitioner,

3    and does not controvert or preclude Petitioner's consistent explanation that he used the passport

4    only after that person's arrival. See Nightingale Decl., Exh. D (showing that Interpol had no

5    further evidence regarding the use and ownership of that passport).

6    Therefore, Respondent's evidence does not preclude Petitioner from meeting his burden at

7    trial based on his credible and consistent testimony about his birth and upbringing in the United

8    States. This Court may find, based on Petitioner's credible and consistent testimony at trial, that

9    he meets his burden.

> (2) Assuming this Court finds that Respondent meets his initial
> burden of production, Petitioner sets forth specific evidence
> of a genuine issue of fact regarding his citizenship, which
> warrants de novo review by this Court.

12    Petitioner also presents specific evidence in this case that shows a genuine issue of

13    material fact exists for this Court's review. In reviewing the non-moving party's evidence, a

14    court should believe it as true, resolve all doubts against the moving party, construe the evidence

15    in the light most favorable to the non-moving party, and draw all reasonable inferences in the

16    non-moving party's favor. See Beard v. Banks, 126 S.Ct. 2572, 2578 (2006); Eastman Kodak

17    Co. v. Image Technical Servs., Inc., 504 U.S. 451, 456 (1992); Anderson, 477 U.S. at 255. So

18    long as more than one reasonable inference may be drawn, and one inference creates a genuine

19    issue of material fact, the trier of fact is entitled to decide which inference to believe and

20    summary judgment is not appropriate. See Hunt v. Cromartie, 526 U.S. 541, 552 (1999). The

21    court will not weigh the credibility of witnesses or other evidence in ruling on a motion for

22    summary judgment. Evaluating credibility, weighing evidence, and drawing factual inferences

23    are all functions reserved for the trial. See Anderson, 477 U.S. at 255.

24    Attached to this opposition, Petitioner submits his declaration that contains specific facts

25    regarding his birth and upbringing in the United States, and two delayed birth certificates that

26    also show that the State of California recognized his birth in California. See Nightingale Dec.,

27    Exh. A-C. This evidence is consistent with his testimony for the past 20 years and sufficient to

28    meet Petitioner's burden in opposing the motion for summary judgment given that, upon hearing

20

1   his testimony a reasonable jury (or judge) could find in his favor.  See Agosto, 436 U.S. at 760-

2   61; See also Murphy, 54 F.3d at 611-12.  Petitioner also submits evidence showing that

3   Respondent's evidence to the contrary is unreliable and inconclusive. See Nightingale Decl., Exh.

4   D-H.

5          Specifically, in his declaration, Petitioner states that he was born at home in Richmond,

6   California, in 1963, and that his mother abandoned him shortly after his birth.  He was

7   consequently raised by his grandmother, who was deeply religious, and as a result, home-

8   schooled him and kept him isolated from other children and other family members.  After his

9   grandmother became ill, he moved in with his uncle, who did not require that he go to school.

10  His grandmother died between 1982 and 1984.  At the age of 22, in 1985, he began making

11  efforts to obtain identity documents so that he could attend college and improve his employment

12  prospects.  Because of the difficulty of obtaining identity documents without a birth certificate, he

13  bought a British passport off the street in the name of Preston Hudson. He began to use that

14  passport as a form of identification, and used it to obtain a driver's license and social security

15  numbers, which he slowly modified to come closer to his true identity.  He then enrolled in

16  school, eventually obtaining a degree and years of steady employment as an accountant, as had

17  been his goal. In 1986 and 1991, he sought to obtain delayed birth certificates from the State of

18  California.  His applications included declarations by family members and friends, with whom he

19  was in touch at that time.  These delayed birth certificates were subsequently sealed by the OVR

20  based on representations from the INS.  See Deiss Decl., Exh. 5 at ¶¶ 7, 14.  He has been

21  subsequently litigating the issue of his citizenship in removal proceedings for the past 20 years.

22         Notably, in Agosto, the Supreme Court was faced with a case in a similar factual and legal

23  posture to Petitioner's case.  In response to the commencement of deportation proceedings, Mr.

24  Agosto asserted that he was a United States citizen Id. at 750.  Over the course of several years, a

25  series of hearings were held before the Immigration Court.  During those proceedings, the INS

26  sought to establish that Mr. Agosto was born in Italy of unknown parents, was placed in a

27  foundling home, and was adopted by an Italian couple.  Id.  In response, Mr. Agosto asserted

28  through his own testimony, and those of witnesses, that he was born in Ohio of an Italian mother,

21

1    and was sent to Italy at an early age to live with an Italian couple.  Id.

2    　　　The Immigration Judge and the Board denied Mr. Agosto's claims to citizenship, in part

3    based on negative credibility findings. Id. at 751. Upon appeal to the Ninth Circuit, Mr. Agosto

4    petitioned for the case to be transferred to the district court for a de novo hearing on his

5    citizenship pursuant to former 8 U.S.C. § 1101a(a)(5)(B) (1976). Id.  This request was denied,

6    and was appealed to the Supreme Court.  Id. at 752.

7    　　　After finding that Mr. Agosto was entitled to have his case transferred to the district court

8    if it presented a genuine issue of fact, the Supreme Court reviewed the evidence presented by Mr.

9    Agosto in opposition to summary judgment.  This evidence included inconsistent testimony by

10   Mr. Agosto and no clear answer regarding the identity of his true parents.  Id. at 758-761.

11   　　　However, the Supreme Court nevertheless found that a genuine issue of fact existed in the

12   case. The Supreme Court stated that "[w]e need not decide whether petitioner's testimony,

13   standing alone, is so inherently incredible in light of its internal inconsistencies as to justify

14   denial of de novo judicial review of the citizenship claim." Id. at 760.  Rather, it found that there

15   was a limited set of facts that were needed to accept Mr. Agosto's claim to citizenship, and that

16   sequence of events, "while out of the ordinary, were not so extraordinary to compel disbelief in

17   their occurrence." Id. at 761.  It noted in particular that

18   
19   
20   
21   
> [i]t is noteworthy that, starting in his first deportation hearing, petitioner has
> acknowledged that he is not certain of his true parental origins …And given the
> obvious confusion and uncertainty surrounding the circumstances of petitioner's
> birth (under either the Service's theory or that of petitioner), it is hardly surprising
> that petitioner cannot say with any degree of certainty who his true parents might
> have been.

22   Id. at 759-60.  It therefore concluded that "[s]ince the documentary evidence submitted by the

23   Service would be refuted by the testimony of petitioner's witnesses if that testimony were

24   accepted by the trier of fact, [], there is plainly a genuine issue of material fact for the District

25   Court on the question of petitioner's citizenship." Id. at 760.

26   　　　Likewise in this case, the Court should find that there are only a limited set of facts

27   needed to accept Petitioner's testimony: namely that he was born at home in Richmond, raised in

28   isolated circumstances by his grandmother and uncle, and that he subsequently used a false

22

British passport to obtain further identity documents.  The Court may make this finding on the basis of Petitioner's consistent and credible testimony during his hearing.  As in <u>Agosto</u>, Petitioner has testified consistently throughout his removal proceedings as to his home-birth, isolated upbringing, and reasons for using the British passport. 436 U.S. at 759.  His claim to citizenship was upheld by witnesses who supported him in his applications for delayed birth certificates.  Also, as in <u>Agosto</u>, "[t]hese events, while out of the ordinary, are not so extraordinary as to compel disbelief in their occurrence."436 U.S. at 760-61.  In light of the similar nature of other extraordinary cases, such as <u>Agosto</u> and <u>Murphy</u>, Petitioner's testimony, corroborated or not, cannot be rejected out of hand.  Finally, in addition, the documentary evidence produced by the INS to disprove Petitioner's claim – namely the evidence of an entry from a foreign country using the passport -- would be refuted by Petitioner's testimony if that testimony were accepted by this Court. <u>Id</u>. at 761.  The evidence attached by Petitioner, regarding the inconclusive efforts of the INS in the former proceeding to undermine his testimony, bolsters the validity and credibility of his testimony. <u>See</u> Nightingale Decl., Exh. D-H.

In reviewing Respondent's motion for summary judgment, this Court should find that Petitioner's evidence remains sufficient for proceeding to a <u>de novo</u> hearing.  As previously shown, Petitioner presented this same evidence to the Ninth Circuit, which found that it was sufficient to warrant transfer to this Court pursuant to 8 U.S.C. § 1252(b)(5)(B).  Respondent presents no new evidence in support of his motion for summary judgment that undermines the validity of that prior evidence.  This Court should therefore find the same conclusion applies to deny this motion for summary judgment.

V.    <u>CONCLUSION</u>

Thus, based on the aforementioned arguments, this Court should not transfer this action to another district, and should deny Respondent's motion for summary judgment.

Date submitted:  April 18, 2008                    Respectfully submitted,

                                                   /s/ Zachary Nightingale
                                                   Zachary Nightingale
                                                   Avantika Shastri
                                                   Counsel for Petitioner

23